Erik F. Stidham (ISB #5483)
Scott Randolph (ISB #6768)
HOLLAND & HART LLP
101 S. Capitol Blvd., Suite 1400
P.O. Box 2527
Boise, ID  83701-2527
Phone: (208) 342-5000
Facsimile:  (208) 343-8869
efstidham@hollandhart.com

Martin Harris (pro hac vice application pending)
HARRIS & AFFILIATES Ltd
515 N. State – Suite 1805
Chicago, IL 60654
Phone:  (312) 644-1800
Facsimile:  n / a
marty@mharrislaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | | |
|---|---|---|
| **MetLife Bank, N.A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:10-CV-00118-CWD** |
| **v.** | ) | |
| | ) | |
| **John Badostain;  Jon L. Lewis;** | ) | |
| **Brian J. Neville;  Michael D. McLean;  &** | ) | **Plaintiff's Points and Authorities** |
| **Eagle Home Mortgage, LLC,** | ) | **Opposing Rule 11 Sanctions** |
| | ) | |
| **Defendants.** | ) | |

I. **Introduction**…………………………………...……………………….…………………......1

    A. The Non-Piracy Agreements………………………………………………………2

    B. Evidence that Defendants "Approved the Hirings" At Issue Here…………………2

    C. Evidence that Defendants "Suggested" Eagle Recruit Plaintiff's Employees………..3

    D. Eagle's "Knowing" Participation……………………………………………….……4


II. **Legal Standards Governing a Rule 11 Motion**……………….……….…………......5

    A. Rule 11 Only Requires a Plaintiff to have *Some* Evidence….…………………….…..5

    B. <u>Attorneys' Fees</u>:  Under Rule 11, Fee Awards are a 2-Way Street……..……..…….6


III. **Legal Analysis:  Plaintiff has Ample "Evidentiary Support" for Its Allegations**………7

    A. Circumstantial Evidence Satisfies Rule 11……………………..…………………….7

    B. "Defendants' Cases" Fail to Support Their Position…………………..…………….9


IV. **Defendants' Effort to "Outweigh" Plaintiff's Evidence Badly Misses the Mark**………..11

    A. Additional Facts / Background Relevant to These Issues……………………………11

        1. Defendants Refused to Give Plaintiff a Copy of the Declarations…………..11

        2. The Substance of Badostain's Declaration…………………………………12

        3. Plaintiff's Rule 26(a) Disclosures……………………………………………13

    B. Legal Analysis:  Defendants' Arguments are Meritless………………………...…13

        1. Plaintiff's Rule 26(a) Disclosures……………………………………………13

        2. Badostain's Allegation That He "Stayed Out of the Hiring Process"………..15

            • This Declaration Cannot be Considered…………………………15

            • Plaintiff is Entitled to Test the Declaration's Veracity…………………16

        3. Allegations About Why Loan Officers Left MetLife Bank……………..…17


V. **Procedural Bar:  Defendants' Motion Should be Stricken for Failure to Strictly Comply with the 21-Day "Safe Harbor" Requirements**……………..…………18


VI. **Plaintiff Should be Awarded the Attorneys' Fees It Incurred Opposing This Motion**……………………….…………………………………20


**CONCLUSION**……………………………………………………20

## I.      Introduction

Defendants' motion for Rule 11 sanctions should be denied for multiple reasons.  <u>First</u>, it is procedurally barred, because defendants failed to strictly comply with Rule 11's "safe harbor" requirements.  This issue will be addressed toward the end of this Brief, after the merits.

<u>Second</u>, plaintiff has ample "evidentiary support" for the allegations at issue. Defendants' contrary view rests on a fundamental misunderstanding of Rule 11.  They insist that inferences drawn from circumstantial evidence do not count as real evidence.  Not a single case supports that absurd view, while multiple cases reject it.  Defendants' argument also misrepresents the nature of plaintiff's claim.  In one part of their brief they correctly describe it, but elsewhere they set up and attack a "straw man"; i.e., a different theory that plaintiff is not advocating.

<u>Third</u>, defendants try to "outweigh" plaintiff's evidentiary support by offering contrary evidence, and by advocating their own "theory of the case."  That is impermissible in the Rule 11 context.  As defendants concede (on p. 3 of their Motion), the only issue under Rule 11 is whether plaintiff has "at least *some* evidence" to support its allegations, not whether a preponderance of the pre-discovery evidence supports plaintiff's claims.  Thus, all the allegedly contrary evidence that defendants recite is irrelevant to this motion (e.g., their allegations that Badostain and Lewis stayed out of the hiring process, that plaintiff's loan officers were discontent; etc.).

<u>Finally</u>, not only should defendants' motion be denied, this Court should award plaintiff the attorneys' fees it incurred opposing this motion.  A fee award is warranted here for several reasons, including:  (1) defendants' motion is frivolous; (2) their motion misrepresents the holdings of multiple cases; (3) it misrepresents facts, too; and (4) it appears likely that defendants had ulterior motives for filing this motion (trying to gain certain tactical advantages).  This issue is addressed further in Plaintiff's Motion For Fees, which is being filed simultaneously.

### A.      The Non-Piracy Agreements

In their Rule 11 motion, defendants insist that plaintiff lacks evidence of "solicitations" in the classic sense:  i.e., evidence that after resigning from their management jobs with plaintiff, the individual defendants actively *encouraged* or *induced* others among plaintiff's employees to apply to Eagle.  However, the non-piracy agreements at issue here are much broader than that.

In addition to prohibiting defendants from actively encouraging anyone to leave MetLife Bank, those contracts also prohibit defendants from *facilitating* an employee's departure in any way.  When, as here, defendants become managers for a competitor, they are prohibited from **"approv[ing the] hire"** of any MetLife Bank employee by that competitor.  (Exhibit A).  Likewise, they are forbidden to help that competitor (Eagle) target or recruit any MetLife Bank employees, for example, by "suggest[ing]" that Eagle "contact" those employees to "discuss or mention [any] job opportunity" to them.  (Exh. A).  The key provision in the non-piracy agreement provides that for 18 months following termination:

> I will not solicit any employee of MetLife or its affiliated entities ("Employee") to become employed, associated, or contracted by or with me or any entity in which I become an employee, owner or investor ("Other Company").  I will not solicit any Employee to become employed, associated or contracted with an organization providing services to me or any Other Company.  For example, I will not [a] inform an Employee of a job opportunity with me or any Other Company, or [b] *suggest that any person or entity contact an Employee to discuss or mention* such a *job opportunity*.  I also [c] *will not interview* an Employee for a job, or [d] offer*, authorize, approve or agree to hire* an Employee for any job opportunity with me or any Other Company.

(Exh. A, ¶4.B) (emphasis added).

### B.      Evidence that Defendants "Approved the Hirings" At Issue Here

The two relevant individual defendants, John Badostain and Jon Lewis, were high level managers at MetLife Bank.  They left to take similar positions at Eagle.  In his new job, Lewis oversees all of Eagle's branches in Idaho.  (Answer, ¶15).  Lewis reports to Badostain, a senior vice president who oversees a multi-state region that includes Idaho.  (Answer, ¶14).

In 2010, after Badostain and Lewis joined Eagle, in Idaho alone, Eagle hired more than 20 loan officers and branch managers away from MetLife Bank.  (Mustach declaration, ¶3).

As part of their *regular duties*, both Lewis and Badostain participate in hiring personnel for Eagle's branches in Idaho.  For example, in the *normal course of his duties*, Badostain is responsible for "approving the hiring" of any new loan officer here.  That fact is undisputed:

> Defendants . . . admit that . . . Badostain's responsibilities [at Eagle] include hiring, and/or approving the hiring, of loan officers at branches within his region. . . .

(Answer, ¶14) (responding to ¶17 of the Complaint).

Likewise, the Answer "admit[s] that Lewis now holds a managerial position with Eagle in which . . . he supervises [Eagle's] branch managers . . . throughout Idaho."  (Answer, ¶15) (responding to ¶18 of the Complaint).  That role is often referred to as a "district manager."  In this industry, a district manager typically not only supervises existing branch managers in his territory, he also interviews prospective new branch managers in that territory, and approves their hirings (or has substantial input into those hiring decisions).  (Mustach, ¶2).

Based on these facts, plaintiff drew a **logical inference**.  Since Badostain's and Lewis's *regular duties* include approving the hiring of new loan officers and branch managers in Idaho, plaintiff inferred that Badostain and Lewis approved Eagle's hirings of the 20-or-so *Idaho* loan officers and Idaho branch managers at issue here.  (Complaint, ¶23, ¶26, ¶29).

### C.    Evidence that Defendants "Suggested" Eagle Recruit Plaintiff's Employees

Shortly after Eagle hired Badostain and Lewis, it suddenly began running advertisements, and/or posting openings on job search websites (e.g., Monster.com), for loan officers in Idaho, especially around Boise and Pocatello – the two main Idaho cities where plaintiff had branches.  (Mustach, ¶5).  At the time, Eagle did not even have a branch "in or near Boise," (Answer, ¶16), or near Pocatello.  Apparently, though, Eagle expected a sudden flood of applications from loan

officers in Boise and Pocatello – enough to make it worth opening new branches there.

Further, by a remarkable coincidence, only the *good* loan officers from the four relevant Idaho branches responded to those ads. Mysteriously, the 2 low producers at one of plaintiff's Boise branches were the only able-bodied loan officers (out of 22) who did not apply to Eagle and obtain jobs there. (Mustach, ¶6-7) (a third also did not apply, but she was on a leave of absence). The low producers remained with plaintiff until they were discharged. (Mustach, ¶7).

Based on these facts, plaintiff reasonably inferred that: (a) Badostain or Lewis suggested that Eagle contact plaintiff's loan officers in Idaho, to recruit them; and/or (b) they told Eagle *which* of plaintiff's loan officers to target, and who to avoid. If defendants did *either* of these things (or both), they violated their non-piracy agreements. As noted above, those contracts forbid defendants from "suggest[ing] that any [competitor or recruiting agency] contact [any of plaintiff's] Employees to discuss or mention ... a job opportunity." (Exh. A).

### D.    Eagle's "Knowing" Participation

The allegation that Eagle tortiously interfered, by knowingly allowing or encouraging breaches of contract and fiduciary duty, rests on two foundations: (a) Eagle's knowledge of the non-piracy agreements, coupled with its knowledge of Badostain's and Lewis's job duties; and (b) Eagle's knowledge that two *other* defendants breached their fiduciary duties.

<u>First</u>, prior to hiring plaintiff's loan officers and branch managers, Eagle was aware that the individual defendants were bound by non-piracy agreements. Plaintiff has direct evidence of this fact, because plaintiff mailed a copy of Badostain's contract to Eagle's President. (Exhibit B). Further, as Badostain is an officer of Eagle (a "senior vice president"), his knowledge of Lewis's non-piracy agreement is imputed to Eagle.

<u>Second</u>, plaintiff alleges that *while still employed*, the Branch Manager Defendants (Neville and McLean) breached their fiduciary duties by soliciting plaintiff's loan officers, and

4

by negotiating package deals with Eagle to move their entire teams to Eagle.  Eagle concedes

that *this* allegation of <u>Pre</u>-Departure Conduct is not subject to a Rule 11 challenge.  Obviously,

Eagle would have known about any such meetings with its own management team.

## II.    Legal Standards Governing a Rule 11 Motion

Rule 11 sanctions are an "extraordinary remedy" that should only be granted in "rare

and exceptional' cases." <u>Kelter v. Associated Financial Group</u>, 2010 U.S. App. LEXIS 11661, *5

(9th Cir. 2010).  *See also* <u>Operating Engineers Pension Trust v. A-C Co.</u>, 859 F.2d 1336, 1344

(9th Cir. 1988) ("we reserve [Rule 11] sanctions for the rare and exceptional case where the

action is clearly frivolous"). There is a "strong presumption" against imposing Rule 11 sanctions:

> Freedom of access of the courts is a cherished value in our democratic society. . . .
> Creating a risk that the invocation of the judicial process may give rise to punitive
> sanctions simply because the litigant's claim is unmeritorious could only deter the
> legitimate exercise of the right to seek a peaceful redress of grievances through
> judicial means. . . .  The strong presumption is against the imposition of sanctions
> for invoking the processes of the law.

<u>Operating Engineers</u>, 859 F.2d at 1344 (quoting <u>Talamini v. All-State Ins</u>., 470 U.S. 1067 (1985)).

### A.    Rule 11 Only Requires a Plaintiff to have *Some* Evidence

Rule 11 requires an attorney to conduct a "reasonable investigation" to verify that the

"factual contentions" in a pleading have "evidentiary support."  FRCP 11(b)(3).  This is a light

burden.  An attorney satisfies this duty by confirming that "*some* evidence" supports his client's

position, <u>Brubaker v. Richmond Financial Holding Co.</u>, 943 F.2d 1363, 1377 (4th Cir. 1991),

even if that evidence is "weak."  <u>Calif. Architectural Bldg. Prods. v. Franciscan Ceramics</u>, 818

F.2d 1466, 1473 (9th Cir. 1987) (plaintiff's evidence was "weak," but "not so baseless ... [and]

so lacking in plausibility] ... that sanctions ought to be imposed").

> For Rule 11 purposes, the allegation merely must be supported by *some* evidence.
> Because we are unable to say that plaintiffs had *no* factual basis for their
> allegation, we cannot conclude that plaintiffs violated Rule 11's factual inquiry
> requirement.  The district court abused its discretion by awarding sanctions. . . .

Brubaker, 943 F.2d at 1377 (italics in original). *See also* Berweger v. County of Orange, 121 F. Supp. 2d 334, 339 (S.D. N.Y. 2000) ("there was *at least some* circumstantial evidence to support [plaintiff's] claim"; nothing more is required to comply with Rule 11) (emphasis added).

Rule 11 sanctions cannot be imposed unless the "factual contentions **entirely lack** evidentiary support." Stiglich v. Contra Cost Bd. Of Supervisors, 1997 U.S. App. LEXIS 897*, *21 (9th Cir. 1997) (emphasis added). "With regard to factual contentions, [Rule 11] 'sanctions may not be imposed unless [the] allegation is **utterly lacking** in support'." Storey v. Cello Holdings, 347 F.3d 370, 388 (2d Cir. 2003) (emphasis added). *See also* Harding Univ. v. Consulting Services Group, Inc., 48 F. Supp. 2d 765, 769 (N.D. IL 1999) ("a sanction will not be imposed unless [the] allegation [at issue] is **utterly void** of support") (emphasis added).

Defendants recite an outdated standard. According to them, Rule 11 requires an allegation to be "well grounded in fact." (Defs' Brief, p. 12). That *was* the standard before 1993, but in 1993 Congress amended Rule 11. It *deleted* the "well-grounded in fact" language, substituting the less demanding "ha[s] evidentiary support" standard. E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) ("the 1993 Amendments to Rule 11 relaxed the necessary basis . . . from the more rigorous 'well-grounded in fact,' to [the current] standard"). At any rate:

> "Rule 11 does not require a party to have sufficient information, before filing a complaint, to survive a summary judgment motion, Hartman v. Hallmark Cards, Inc., 833, f.2d 117, 124 (8th Cir. 1987), or [even] to survive a motion to dismiss for failure to state a claim[.] Beeman v. Fiester, 852 F.2d 206, 211 (7th Cir. 1988).

Vista Mfg., Inc. v. Trac-4, Inc., 131 F.R.D. 134, 138 (N.D.Ind. 1990).

### B.    Attorneys' Fees:  Under Rule 11, Fee Awards are a 2-Way Street.

As defendants correctly state (on p. 13 of their Brief), Rule 11 sanctions are discretionary. "[I]f the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction," including but not limited to attorneys' fees. FRCP 11(c)(1) (italics added).

6

Notably, under Rule 11, fee awards are a 2-way street.  To deter abusive Rule 11 motion practice, the Rule authorizes attorneys' fees to be awarded to *any* "prevailing party," including one who successfully *opposes* a Rule 11 motion.  FRCP 11(c)(2).  This "2-way street" feature is pertinent here.  As shown below, the only frivolous paper filed in this case is *Defendants'* Motion for sanctions.  Among other things, their motion misrepresents the holdings of multiple cases it cites (almost all of those cases *deny* Rule 11 sanctions – a clear indication that they do not really say what defendants claim they say).  Plaintiff has filed a separate motion asking this Court to award plaintiff the attorney fees it incurred opposing defendants' ill-conceived Rule 11 motion.

## III.   Legal Analysis:  Plaintiff has Ample "Evidentiary Support" for Its Allegations

### A.   Circumstantial Evidence Satisfies Rule 11

To date – without the benefit of discovery – the claim that defendants violated their non-piracy agreements (e.g., by approving hirings) rests on inferences from circumstantial evidence, such as their regular job duties at Eagle.  According to defendants, this leaves plaintiff with zero "evidentiary support."  That accusation rests on a fundamental misconception about the "evidentiary support" required by Rule 11.  According to defendants, any time a party relies on **inferences** drawn from **circumstantial evidence**, it lacks "evidentiary support"; therefore, it must "specifically" plead that its allegation rests solely on inferences:

> Rule 11 requires the party of have evidentiary support for its allegations before making them.  If that evidence is merely circumstantial, such that the allegation is based solely on reasonable inferences from the available evidence, then the party's complaint must specifically identify that allegation as one which "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

(Defs' Motion, p. 12).  This assertion about "circumstantial evidence" and "inferences" is dead wrong.  Not one case cited by defendants supports that view, while multiple cases reject it.

Under Rule 11, "circumstantial evidence," and a reasonable inference drawn from it, is not treated any differently than "direct evidence."  Lucas v. Duncan, 574 F.3d 772 (D.C. Cir.

2009) ("there is no basis in the text of Rule 11(b)(3) for the legal proposition that an attorney must separately identify 'fact' and 'inference'").  Courts consistently hold that circumstantial evidence satisfies Rule 11's "evidentiary support" requirement.  *E.g.* (emphasis added each time):  <u>Calif. Architectural Bldg. Prods.</u>, 818 F.2d at 1473 (9th Cir. 1987) (*reverses* sanctions, because "Franciscan's sudden closing was **circumstantial evidence**, however weak, of a possible earlier undisclosed plan to close); <u>Rounseville v. Zahl</u>, 13 F.3d 625, 633 (2d Cir. 1994) (*reverses* sanctions, because "the available **circumstantial evidence** could plausibly support the inference that there was a conspiracy"); <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d 90, 94 (3d Cir. 1988) (*reverses* sanctions.  Plaintiff lacked direct proof, but "knew facts that supported a *reasonable suspicion*" of conspiracy.  This "circumstan[tial]" evidence, along with "the **rational inferences** that may be drawn from [it], convince us" that plaintiff did not violate Rule 11).

The most instructive case is <u>Lucas</u>, 574 F.3d 772 (D.C. Cir. 2009).  In <u>Lucas</u>, a Magistrate imposed Rule 11 sanctions, but the Court of Appeals reversed.  The Magistrate adopted the very same line of reasoning as defendants advocate here.  He, too, believed that when a party relies solely on inferences from circumstantial evidence, it must state that it lacks evidentiary support for that point, but hopes to develop supporting evidence later:

> The principal basis upon which [the Magistrate] imposed sanctions was his finding that many of the eleven statements that Karl drafted were "classic examples of inferences disguised as statements of fact."  <u>Lucas</u>, 408 F. Supp. 2d at 12.  "[A] classic misstatement," he said, "is one in which an inference that might or might not be drawn from the facts is stated as a fact itself."  *Id.*  The [Magistrate] illustrated this point with the following example:
>
>> [T]hat a man walks into a room with a wet umbrella might permit the inference that the man was recently outside and that it was raining. It might also be true that the man decided to wash the umbrella. Given these facts, an advocate cannot first say "it was raining" but later, when challenged, explain that what was originally stated as a fact was actually only an inference that could have been drawn from the fact that the umbrella was wet.  The statement, "it was raining" is objectively false.  It asks the reader to believe that what is merely an inference that may be drawn from a set of facts is itself a fact.

Lucas, 574 F.3d at 776.  The appellate court emphatically disagreed.  Lucas, 574 F.3d at 777

(there is **"no basis"** for that view, either in the Rule's text or in the case law).  It explained

that the concept of "evidentiary support," as used in Rule 11, is not nearly so narrow:

> There is no basis in the text of Rule 11(b)(3) for the legal proposition that an
> attorney must separately identify "fact" and "inference."  The Rule merely requires
> an attorney to certify that the factual contentions in a paper he presents to the court
> "have evidentiary support."  FED. R. CIV. P. 11(b)(3).  "Inferences" –  which are
> commonly described as "circumstantial evidence" – are as capable of providing
> evidentiary support as "facts" – which are commonly described as "direct evidence."
>
> * * *
>
> In short, the basic legal premise upon which sanctions were imposed was incorrect.
> To take the magistrate judge's example:  If an attorney has evidence that a man
> "walked into a room with a wet umbrella" at a certain time, the attorney does have
> "evidentiary support" for the "factual contention" that "it was raining" at that time.
> Id. at 12.  He may not have proof by a preponderance, but he certainly has
> "support."  Accordingly, a lawyer does not violate Rule 11 by saying so.

Lucas, 574 F.3d at 777, 778-79.

Applying that analysis here, based on circumstantial evidence and reasonable

inferences, plaintiff has ample "evidentiary support" for its allegation that Badostain and

Lewis participated in hiring away plaintiff's loan officers.  For example, plaintiff *knows* that

due to their positions, Badostain and Lewis *ordinarily* must approve Eagle's hirings of loan

officers and branch managers in Idaho.  Plaintiff also *knows* that Eagle hired away more than

20 of plaintiff's loan officers at branches in Idaho.  That is all Rule 11 requires.  From this

circumstantial evidence, it is more than reasonable to infer that, at the very least, Badostain

and Lewis approved the hirings of these employees. This is no different than inferring that it

is raining, based on seeing someone carrying an umbrella that is dripping water.

### B.    "Defendants' Cases" Fail to Support Their Position

Defendants address this issue – does circumstantial evidence qualify as "evidentiary

support"? – on pages 11-13 of their Motion (in Section A.1).  In that section, they cite 4

9

cases.  They claim that according to those 4 cases, a party should be sanctioned under Rule 11 if it relies on evidence that is "merely circumstantial," without "specifically identify[ing] that allegation" as lacking "evidentiary support."  (Defendants' Motion, p. 12).

That is a blatant misrepresentation.  Not one of the cited cases remotely supports that view.  To the contrary, in all 4 cases, sanctions were *denied* (or *reversed* on appeal).  Further, to the extent these cases say anything about circumstantial evidence, they *uphold* it as a valid type of "evidentiary support" that satisfies Rule 11.  Here is a brief summary of these cases:

- Lebovitz v. Miller, 856 F.2d 902 (7th Cir. 1988) (*reverses* sanctions). In this case, the "sanctions [issue] really involve[d] the reasonableness of inferring, from the facts [plaintiff knew], ... that Miller was a party to [the other defendants'] scheme."  Id. at 905.  The Court reversed an award of Rule 11 sanctions, despite plaintiff's lack of direct evidence, because "the sequence of events . . . permit[s] a **reasonable inference** that some wrongdoing was afoot," and that is all Rule 11 requires.  Id at 906 (emphasis added).

- Brubaker v. Richmond Financial Holding Co., 943 F.2d 1363 (4th Cir. 1991) (*reverses* sanctions).  The "evidence permitted [plaintiff] to **draw an inference**, albeit a weak one, that [defendant] was involved in a scheme," in part because it was **"reasonable to *assume*"** certain facts.  Id. at 1377 (emphasis added).  That satisfies Rule 11, because "for Rule 11 purposes, the allegation merely must be supported by *some* evidence," not by a preponderance.  Id. at 1377.

- Christian v. Mattel, Inc., 286 F.3d 1118 (9th Cir. 2002) (*reverses* an award of sanctions on other grounds, unrelated to the merits).  This case never discusses the propriety of relying on inferences drawn from circumstantial evidence, as opposed to direct evidence, so it is irrelevant to the present motion.

- Harding Univ. v. Consulting Services Group, Inc., 48 F. Supp. 2d 765, 769 (N.D. IL 1999) (*denies* motion for sanctions) ("a sanction will not be imposed [under Rule 11] unless a specific allegation is utterly void of support").

In sum, circumstantial evidence supports the allegation that defendants violated their non-piracy agreements. Contrary to defendants' mistaken belief, that satisfies Rule 11.

**IV.    Defendants' Effort to "Outweigh" Plaintiff's Evidence Badly Misses the Mark**

Defendants' Brief raises three additional arguments / theories.  Collectively, these arguments seek to negate or outweigh the circumstantial evidence on which plaintiff relies.  According to defendants:  (1) when Eagle hired plaintiff's employees, Badostain and Lewis stayed out of the process, even though normally it is part of their duties to approve such hirings; (2) the loan officers were unhappy at MetLife Bank, so Badostain and Lewis didn't need to solicit them; and (3) plaintiff's Rule 26(a) Disclosures fail to identify any witnesses who can testify that Badostain and Lewis breached their non-piracy agreements.

All three arguments are groundless, particularly in the context of a Rule 11 motion.  The first two merely debate the ultimate merits of this case, relying on recent affidavits and other alleged "facts" that are irrelevant to a Rule 11 motion (those declarations cannot even be considered at this stage).  The truth or falsity of those allegations must be tested through discovery.  The third argument, regarding plaintiff's Rule 26(a) Disclosures, is worse.  It is both false and irrelevant – on top of that, it is worded in a calculated and misleading way.

**A.    Additional Facts / Background Relevant to These Issues**

**1.    Defendants Refused to Give Plaintiff a Copy of the Declarations**

Under Rule 11's safe harbor provision, before filing a Rule 11 motion, the moving party must formally serve that motion on its adversary, and then wait 21 days before filing it with the Court.  FRCP 11(c)(2).  Here, prior to filing this motion, defendants sent plaintiff an *unsigned draft* of their motion and brief, but failed to "serve" either of those documents.

Even worse, during the safe harbor period, defendants refused to give plaintiff a copy of the declarations *now* attached to their motion, not even an unsigned draft.  This was not an accidental oversight, it was intentional.  On July 29, plaintiff's attorney called this omission to defense counsel's attention, then requested that the declarations be provided promptly:

> The draft motion and brief you sent me refers to declarations from John
> Badostain, Tamra Lanore, and Lennar.  However, the package you sent me
> omitted those declarations.  Please forward them immediately.  Thank you.

(Exh. G).  Defendants ignored that request.  A week later, on August 6, plaintiff's counsel

reminded defendants' lawyers that these declarations still had not been provided:

> [Y]ou sent me an *unsigned*, "draft" motion, without attaching any of the three
> declarations that supposedly support it.  I brought the missing declarations to
> your attention a week ago, but you still have not forwarded them to me.

(Exh. H, p. 1).  Again, defendants refused.  Plaintiff never received *any* of defendants'

declarations until August 20, 2010, when the present motion was filed.  (Harris, ¶10).

### 2.      The Substance of Badostain's Declaration

Defendants rely on Badostain's declaration as supposedly conclusive proof that both he

and Lewis stayed completely out of Eagle's decisions to hire plaintiff's loan officers and branch

managers.  As to Lewis, however, Badostain merely says that "*to my knowledge*," Lewis did not

participate in those decisions.  (Badostain, ¶10).  That is hardly conclusive, especially since

Badostain insists that he was not personally involved in the decisions.  *If* that is true, then he

would have no way of knowing whether or not Lewis was involved.

Further, defendants have never disclosed *who* supposedly made these *decisions*, in lieu of

having Lewis and Badostain make them.  Badostain says Eagle " set up a procedure" for having

someone (*unidentified*) at corporate headquarters "*process* the job applications" from plaintiff's

employees.  (Badostain, ¶10). Leaving aside administrative tasks, such as processing applications

or scheduling interviews, though, he never says who made the hiring *decisions*.  In short, this

declaration, drafted by lawyers, is carefully worded to state certain legal conclusions (e.g., "I did

not solicit any[one]"), without disclosing the full underlying facts.

Finally, Badostain's declaration is completely silent regarding what role, if any, he

played in *suggesting* that Eagle recruit plaintiff's loan officers.  His declaration leaves open the

very real possibility that even if he avoided *personal contact* with plaintiff's employees, he still played a role *behind the scenes* in approving, initiating, or facilitating their hirings.

### 3.     Plaintiff's Rule 26(a) Disclosures

According to defendants, plaintiff's Rule 26(a) Disclosures only "identify five *individual* witnesses"  (Motion, p. 10) (italics added).  Further, defendants add, none of those witnesses even purports to have knowledge regarding "the alleged Post-Departure Conduct"; e.g., knowledge that Badostain and Lewis violated their non-piracy agreements by approving Eagle's hirings of loan officers in Idaho.  (Motion, p. 10) (plaintiff's descriptions "confirm that [these 5 people] have . . . no knowledge whatsoever regarding the alleged Post-Departure conduct").

That representation about plaintiff's Disclosures is misleading.  In the main text of their Motion (as opposed to a footnote), defendants only mention the <u>first 5</u> witnesses plaintiff identified.  Their main text fails to inform the Court about items 6 and 7 in those same Disclosures:

> 6.     On information and belief, **each of the individual defendants** has knowledge including but not limited to the following:  (a) s/he signed and agreed to be bound by plaintiff's Agreement To Protect Corporate Property ("ATPCP"); [and]  (b) **in violation of the ATPCP**, s/he and/or other individual defendants notified loan officers or others employed by plaintiff that a job opportunity existed at Eagle, interviewed such employees for jobs at Eagle, extended job offers to them on behalf of Eagle, and/or **approved their hiring by Eagle**. . . .

> 7.     On information and belief, **each of the loan officers** and other employees who left plaintiff's employ to join Eagle, has knowledge including but not limited to the following:  (a) one or more of *the individual defendants* . . . notified him/her and/or others employed by plaintiff that a job opportunity existed at Eagle, interviewed him/her for a job at Eagle, extended a job offer to him/her on behalf of Eagle, and/or **approved his/her hiring by Eagle** . . . .

(Exhibit C) (Plaintiff's Rule 26(a) Disclosures) (emphasis added).

### B.     Legal Analysis:  Defendants' Arguments are Meritless

### 1.     Plaintiff's Rule 26(a) Disclosures

Defendants point to plaintiff's Rule 26(a) Disclosures as supposed proof that plaintiff has no direct evidence of Post-Departure [Mis]Conduct.  However, as shown above, plaintiff

identified several "witnesses" who likely have knowledge of such misconduct: Mr. Badostain, Mr. Lewis, Patrick Riley (Lewis' counterpart in Reno), and perhaps the employees they hired.

To the extent that defendants focus solely on evidence of alleged "solicitations," they have construed plaintiff's claim far too narrowly.  The non-piracy agreement prohibits Lewis and Badostain from "approving … hiring[s]" or "suggesting" that Eagle "contact" any of plaintiff's employees about a job, etc., not just from *actively soliciting* plaintiff's employees.

It is true that no one currently employed by plaintiff has firsthand knowledge (i.e., direct evidence) about Eagle's *internal* hiring decisions:  e.g., who within Eagle actually made or approved each decision.  That is hardly surprising.  How could anyone employed by plaintiff possibly have such personal knowledge?  Eagle did not invite plaintiff's executives to come over to Eagle's headquarters and observe the meetings at which these internal hiring decisions were made.

Analogous situations arise in many contexts, where *direct evidence* of certain critical facts (as opposed to circumstantial evidence) lies exclusively in the hands of the defendants. Rule 11 does not prohibit plaintiffs from filing suit in such cases.  To the contrary, these circumstances dictate that the plaintiff must be given even greater latitude under Rule 11; i.e., permitted to rely on circumstantial evidence to an even greater extent, until discovery affords an opportunity to uncover additional evidence.  Estate of Barrett ex rel. Barrett v. United States, 337 F. Supp. 2d 370, 377 (D.Mass. 2004) ("whether an inquiry is 'reasonable under the circumstances' takes into account the lack of access to information within the defendant's exclusive control"); Foxworth ex rel. Collins v. Chichester Sch. Dist., 35 F. Supp. 2d 446, 450 (E.D. Pa. 1999) (*denies* sanctions, because key "information [was] known only to [Defendants] and could only be found through the discovery process"); Greenberg v. Chrust, 297 F. Supp. 2d 699, 704 (S.D. N.Y. 2004); Kraemer v. Grant County, 892 F.2d 686, 689-90 (7th Cir. 1990).

14

### 2.     Badostain's Allegation That He "Stayed Out of the Hiring Process"

For multiple reasons, defendants' argument that Badostain and Lewis stayed out of the hiring process misses the mark.  One reason is procedural, the others are substantive.

●     **This Declaration Cannot be Considered.**  Under the terms of Rule 11, this allegation – and Badostain's declaration, on which it rests – cannot even be considered.  The safe harbor provision requires that every Rule 11 motion be served on the opposing party at least 21 days before it is filed.  FRCP 11(c)(2).  The Ninth Circuit "enforce[s] this safe harbor provision strictly."  Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005).

At the very least, defendants failed to comply with the safe harbor requirements *with respect to the declarations*.  It is insufficient to merely *notify* an adversary that one intends to draft and file declarations, without give the opposing party a copy, so it can review and consider them (*during* the safe harbor period).  The purpose of the safe harbor is to give the opposing party time to consider the precise arguments (and evidence) the motion will raise, so it can decide whether to withdraw an allegation.  Here, during the safe harbor period, plaintiff was denied any opportunity to consider the specific allegations raised in Badostain's declaration (and Laxague's).  What defendants did here – partially *summarizing* the contents of those declarations in a brief, without sending the actual declarations – is analogous to writing a letter *summarizing* the arguments a Rule 11 motion will make, instead of serving the motion itself.  Numerous cases reject that approach as non-compliant. *E.g*., Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998) ("it would . . . wretch both the language and [the] purpose of [Rule 11] to permit an informal warning to substitute for service of a motion"); O'Connell v. Smith, 2008 WL 477875, *1-2 (D. Ariz. 2008) (this principle "is well established in the Ninth Circuit"); Woods v. Truckee Meadows Water Auth., 2007 U.S. Dist. LEXIS 58291, *8 (D. Nev. 2007) (J. Cooke) (defendant sent a detailed 6-page letter

describing the grounds for its Rule 11 motion.  "Notwithstanding this court's view that [defendant] substantially complied with the spirit ... of [the Rule], the current law in this circuit is that strict compliance with the specific requirements of the safe harbor provision is mandatory").

Finally, it bears repeating that this was not an accidental oversight; rather, defendants deliberately refused to give plaintiff the declarations (not even a draft), despite two requests. Now, they must live with the consequences of that conscious decision.  The declarations defendants submitted cannot be considered.  They should be stricken from the record.

● **Plaintiff is Entitled to Test the Declarations' Veracity.**  A "court is expected to avoid using the wisdom of hindsight, and should test [counsel's] conduct by inquiring what was reasonable to believe at the time [counsel acted]."  Salkil v. Mount Sterling Township Police Dept., 458 F.3d 520, 530 (6th Cir. 2006).  A situation analogous to the present one arose in Martin v. Brown, 151 F.R.D. 580 (W.D. Pa. 1993).  One defendant there submitted "uncontroverted affidavits," which averred that "no agency relationship" existed.  Id. at 588.  Based on those affidavits, the defendant insisted that plaintiff lacked any basis to pursue certain claims, so it sought Rule 11 sanctions.  The Court denied that motion for sanctions, explaining:

> These *post-filing* matters have no bearing on what plaintiff's pre-filing investigation turned-up or the reasonableness of counsel's suspicions and inferences *at the time of filing;* this Court does not review the complaints through the wisdom of hindsight.

Martin, 151 F.R.D. at 588 (italics *in original*).

In limited circumstances, Rule 11 imposes an obligation to stop pursuing a claim or allegation, if information obtained later (post-Complaint) conclusively proves that the claim is untenable, or the allegation is false.  This is not such a situation.  *Untested by discovery*, Badostain's declaration falls far short of "irrefutable proof" that he and Lewis played no role whatsoever, directly or indirectly, in approving, suggesting, or facilitating the hirings at issue.  Greenberg v. Chrust, 297 F. Supp. 2d 699, 704 (S.D. N.Y. 2004) (plaintiff persisted with

16

her fraud claim, after defendant filed an affidavit stating that certain events never occurred.  The Court *denied* sanctions because, so early in a case, an "affidavit is inadequate [to fully] resolv[e] these issues"; plaintiff is entitled to probe whether the affidavit is true by taking "depositions").

Early in this type of case (where managers leave, taking other employees or clients with them), the defendants almost always deny *everything*.  Often they put those denials in affidavits, especially if a T.R.O. or preliminary injunction is sought.  Many times, discovery later reveals that those sworn denials were misleading, incomplete, or downright false.  On its face, Badostain's carefully worded, incomplete declaration is likely to follow that trend. It would be absurd to adopt a rule that as soon as a defendant puts his denials in an affidavit, the plaintiff instantly (without any opportunity to test the new allegations in discovery) must choose between two untenable options:  (a) drop its claim within 21 days, before the safe harbor period expires; or (b) be sanctioned under Rule 11, if the denials turn out to be true.

Such a rule would be especially harsh in cases such as this where, at this early stage, certain critical information lies exclusively in the hands of defendants.  *See* Greenberg, 297 F. Supp. 2d at 704 ("facts necessary to demonstrate fraud were located within the exclusive control of [defendant]"; as a result, plaintiff is entitled to take "depositions," she need not accept at face value the denials in defendant's "affidavit").

### 3.    Allegations About Why Loan Officers Left MetLife Bank

Much of Defendants' Brief is devoted to arguing their theory of the case:  plaintiff's loan officers left not because anyone solicited them, but because they were unhappy about changes in plaintiff's compensation plan, along with other aspects the working conditions at MetLife Bank. Again, as a procedural matter, this argument cannot even be considered, because during the 21 day safe harbor period, defendants refused to give plaintiff a copy of the declarations and exhibits on which it rests.  (Supra, pp. 11-12).

17

At any rate, this argument is misguided in a Rule 11 motion.  Rule 11 does not require a plaintiff to weigh all the facts, including evidence that allegedly contradicts its position, and then conclude that a "preponderance" supports a particular allegation. <u>Lucas</u>, 574 F.3d at 779.  As discussed above (pp. 5-9), it requires only that a plaintiff have *some* "evidentiary support" for its position.

Finally, due to the broad nature of the non-piracy agreements at issue, this argument is irrelevant (at least to liability, it might affect damages).  Even if a loan officer decided to leave MetLife Bank entirely of his/her own volition, due to dissatisfaction with plaintiff's new compensation plan, it still violated the non-piracy agreements for Badostain or Lewis to *approve her hiring* by Eagle, or to *suggest* that Eagle contact her about a job opportunity.

Indeed, defendants' entire argument on this issue is a red herring. It refutes a phantom or "straw man"; i.e., an argument plaintiff has not made.  Based on the evidence available so far, plaintiff does not contend that Badostain or Lewis violated their non-piracy agreements by "actively soliciting" the loan officers, in the sense of *personally* initiating contact with them to try to persuade them to leave.  Rather, plaintiff contends that they violated the non-piracy agreements by approving or suggesting hirings; i.e., by acting behind the scenes.

In sum, defendants' various attempts to "outweigh" MetLife's evidence fall flat.  That extraneous evidence has absolutely no bearing on whether Rule 11 sanctions are warranted.

## V.      Procedural Bar:  Defendants' Motion Should be Stricken for Failure to Strictly Comply with the 21-Day "Safe Harbor" Requirements

The present motion is not only groundless on the merits, but also procedurally barred. Rule 11 contains a safe harbor requirement. Before filing a Rule 11 motion, the moving party must serve that motion on the opposing party, and then give that party 21 days to consider whether to withdraw the allegedly offending allegation.  FRCP 11(c)(2). The moving party is

not permitted to file its motion until the 21 day safe harbor period expires.  FRCP 11(c)(2).

As the Ninth Circuit has repeatedly declared, "We enforce this safe harbor provision strictly."  Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005) (Rule 11 imposes "stringent notice and filing requirements on parties seeking sanctions. . . .  We must reverse [an] award of sanctions [if the moving] party failed to comply with the safe harbor provisions," without regard to the underlying merits of the motion). Here, defendants failed to comply.  The 21 days never began running, because defendants failed to *serve* their motion on plaintiff.

On July 16, 2010, before filing the present Rule 11 motion, defendants sent plaintiff an *unsigned draft* of their motion and brief, but failed to serve an executed copy of those papers.  (Exh. F) and (Harris declaration, ¶7) (instead of signing these motion papers, defendants stamped the word "DRAFT" on the signature line).  Even worse, during the 21 day safe harbor period, defendants deliberately refused to show plaintiff the declarations or exhibits referenced in their brief, even after plaintiff notified defense counsel that those materials had been omitted from the July 16 package.  (Harris, ¶8-10) and (Exhs. G and H).

To start the 21 day clock running, Rule 11 requires the moving party to formally "serve" its motion and brief on the other party.  FRCP 11(c)(2) ("the motion must be served under Rule 5").  The Rule does not say "send" or "provide," it says "serve."  To avoid any misunderstanding, the Rule adds that it must be "served under Rule 5"; i.e., in the same manner as any other type of motion is served (without ECF notification, of course).  *See also* Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 778 (9th Cir. 2001) (italics in original) (there is a "strict requirement that [the] motion be *served* on the opposing party [21] days prior to filing"; these "procedural requirements . . . are mandatory"); Woods, 2007 U.S. Dist. LEXIS 58291, *8 (D. Nev. 2007) (J. Cooke) ("in this circuit . . . substantial[] compl[iance]" with the safe harbor requirements is insufficient; "strict compliance . . . is mandatory")

19

What defendants did here, sending an unsigned draft *and* refusing to provide a copy of the supporting declarations, fails to satisfy the requirement.  O'Connell v. Smith, 2008 WL 477875, *1-2 (D. Ariz. 2008) ("Plaintiff *notified* Defendants of her *intention* to file a Rule 11 motion for sanctions, and forwarded . . . a *draft* of that motion" to them, but that is insufficient to comply with the safe harbor requirement) (italics in original). Defendants apparently rely on cases from other circuits, some of which do not enforce the safe harbor rules as strictly as Ninth Circuit courts do, but Ninth Circuit authority is controlling here.

**VI.    Plaintiff Should be Awarded the Attorneys' Fees It Incurred Opposing This Motion**

Due to the page limit imposed by Local Rules, the reasons why fees should be awarded to plaintiff are addressed in a separate Motion For Fees, which is incorporated here by reference.

## CONCLUSION

The Court should deny defendants' motion for Rule 11 sanctions, and should rebuke defendants for their litigation tactics.  Further, the Court should award plaintiff the attorneys' fees it incurred opposing this unfounded and ill-advised Rule 11 motion.

Respectfully submitted,

_s/ Martin Harris_____
Martin Harris
HARRIS & AFFILIATES Ltd
515 N. State – Suite 1805
Chicago, IL 60654
(312) 644-1800
marty@mharrislaw.com

Erik F. Stidham
HOLLAND & HART LLP
101 S. Capitol Blvd. – Suite 1400
Boise, ID  83702
(208) 342-5000
efstidham@hollandhart.com

Attorneys for MetLife Bank, N.A.

## Certificate of Service

I certify that on this 17th day of September, 2010, the foregoing Plaintiff's Points And Authorities Opposing Rule 11 Sanctions was served on defendants via the Court's ECF system, through their attorneys of record:

Matthew T. Christensen
ANGSTMAN JOHNSON
3649 Lakeharbor Lane
Boise, ID  83703

Jeffrey K Brown
PAYNE & FEARS LLP
4 Park Plaza #1100
Irvine, CA 92614

J. Kelby Van Patten
PAYNE & FEARS LLP
7251 W. Lake Mead Blvd., Suite 525
Las Vegas, NV  89128

Matthew L. Durham
PAYNE & FEARS LLP
7251 Lake Mead Blvd #525
Las Vegas, NV 89128

_____s/ Martin Harris_____
One of the attorneys for plaintiff