## Declaration of Martin Harris

1.  I am lead counsel for MetLife in the case of <u>MetLife Bank v. Badostain, et al.</u> (D. Idaho). I have personal knowledge of all facts stated in this Declaration, and I am competent to testify.

2.  Prior to filing the Complaints in this case, I interviewed a number of witnesses, including several employed at plaintiff's branches in Las Vegas, who had attended a meeting in Las Vegas called by Patrick Riley. Those interviews uncovered factual support for the allegations in ¶19 of the Complaint in the Reno case, specifically including, but not limited to, the allegation about Patrick Riley telling loan officers they should call him on his cell phone.

3.  All references to "exhibits" in paragraphs below refer to exhibits that plaintiff submitted on Sept. 17, 2010 to support its Opposition To Rule 11 Sanctions, and its request for an award of attorney fees in connection with that Rule 11 motion.

4.  **Exhibit D** is a true and accurate copy of a letter I received from defendants' attorney, Matthew Durham, dated July 14, 2010.

5.  Exhibit D summarizes, at least in part, a conversation that Mr. Durham and I had on or about July 12, 2010. During that conversation, Mr. Durham asked me to "clarify" the factual basis for plaintiff's breach of contract claim regarding the non-piracy agreement. Among other things, we discussed what Mr. Durham refers to as "claims based on 'Post-Departure Conduct'" by John Badostain, Jon Lewis, and Patrick Riley. As to those Post-Departure claims, I explained that based on available evidence (to date), plaintiff is *not* accusing those individuals of violating their non-piracy agreements by "actively soliciting" plaintiff's loan officers, in the sense of personally initiating contact with them and then trying to induce or persuade them to leave. Rather, I stressed, the Post-Departure Conduct claims against them

stem from circumstantial evidence that behind the scenes: (a) they approved the hirings of plaintiff's loan officers and branch managers; (b) they suggested that Eagle recruit those employees; and/or (c) at least in Mr. Riley's case, he told them about job opportunities at Eagle. During that conversation, to acknowledge his understanding, Mr. Durham repeated what I had said about plaintiff not alleging active solicitations Post-Departure by these individuals.

6. **Exhibit E** is a true and accurate copy of a letter I received from Mr. Durham, dated July 16, 2010.

7. That July 16 letter (Exh. E) was accompanied by a draft of defendants' threatened Rule 11 motion. **Exhibit F** is a true and accurate copy of said accompanying draft. I received Exhibit F both by email and via U.S. Mail. In both cases, the Motion and the supporting Points & Authorities were not signed. In the e-copy that arrived by email, the signature lines were simply blank. In the paper copy that arrived by U.S. Mail, defense counsel had stamped the word "DRAFT" on the signature lines, in large, red letters.

8. After reading Exhibit F, I noticed that it referred to several declarations, but all of them had been omitted from the materials I received (both via email and in the mail). Initially assuming this was just an inadvertent oversight by defense counsel, I notified Mr. Durham of the omission and asked him to promptly send me the referenced declarations. **Exhibit G** is a true and accurate copy of an email I sent Mr. Durham, on July 29, 2010, containing this request.

9. In response to my email, Mr. Durham did not forward any of the declarations. About a week later, on August 6, 2010, I responded to his July 16 letter. In my August 6 response, I reiterated that I still had not received any of the referenced declarations. **Exhibit H** is a true and accurate copy of my August 6 letter to Mr. Durham.

10. Despite my requests, defendants declined to provide the declarations to me during the safe harbor period. The first time I saw *any* of those declarations was on August 20, 2010, via an email generated by the Court's ECF system, after those declarations were filed with the Court.

11. During a conversation with Mr. Durham in August 2010, after I sent my Aug. 6 letter but before defendants filed their Rule 11 motion, Mr. Durham and I discussed several allegations in defendants' draft Rule 11 motion (Exhibit F). One allegation was discussed was as follows: since changing its compensation plan, MetLife Bank supposedly has lost nearly half of its loan officers (specifically, that the number dropped from approximately 1,300 to approximately 700). Reiterating a point I had made in my August 6 letter, I told Mr. Durham that that "700 figure" is "nowhere close to accurate." I added that in response to discovery requests, after a Protective Order is in place plaintiff will produce documents showing that it still employs more than 1,000 loan officers.

12. On or about August 26, 2010, Mr. Durham and I had a long conversation about which depositions each party needs to take during targeted discovery, before trying to settle this case via mediation. During that conversation, he stated that Eagle needs to take the deposition of MetLife Bank's CEO, Donna DeMaio, due to a broadcast email she sent. **Exhibit 2-A**, attached to Defendants' Motion For Rule 11 Sanctions, is the email he referenced. I pointed out that Ms. DeMaio's email (i.e., Exhibit 2-A) never mentions plaintiff's compensation plan. I added that when Exh. 2-A states, "[if you're not on board,] you might want to consider other options," it is referring to an entirely different change (one that is not relevant to this lawsuit), not to changes in the compensation plan. Then I directly stated that in claiming it refers to changes in the compensation plan, defendants are "taking it out of context."

In reply, Mr. Durham did not even try to justify defendants' prior assertions that the quoted comment in Exh. 2-A pertains to the compensation plan. Instead, he replied, in effect: "Whether or not that one is a little out of context, similar statements by Pete Brown clearly addressed the compensation plan." (I'm paraphrasing here, not quoting him, because I do not recall his exact words).

I countered that if so, I can see why Eagle needs to take Mr. Brown's deposition before going to mediation, but I fail to see why Ms. DeMaio's deposition is essential. At that point, Mr. Durham replied by offering *other* reasons why her deposition supposedly is essential, dropping any reference to Exhibit 2-A.

That is the end of this Declaration. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: September 17, 2010         _____
                                 Martin Harris