Erik F. Stidham (ISB #5483)
Scott Randolph (ISB #6768)
HOLLAND & HART LLP
101 S. Capitol Blvd., Suite 1400
P.O. Box 2527
Boise, ID  83701-2527
Phone: (208) 342-5000
Facsimile:  (208) 343-8869
efstidham@hollandhart.com

Martin Harris (pro hac vice application pending)
HARRIS & AFFILIATES Ltd
515 N. State – Suite 1805
Chicago, IL 60654
Phone:  (312) 644-1800
Facsimile:  n / a
marty@mharrislaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| **MetLife Bank, N.A.**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:10-CV-00118-CWD |
| v. | ) |
| | ) |
| **John Badostain;  Jon L. Lewis;** | ) |
| **Brian J. Neville;  Michael D. McLean;  &** | ) **Plaintiff's Motion for an Award of** |
| **Eagle Home Mortgage, LLC,** | ) **the Fees It Incurred Opposing** |
| | ) **Rule 11 Sanctions** |
| Defendants. | ) |

Pursuant to FRCP 11(c)(2), the plaintiff, MetLife Bank, N.A., respectfully moves this Court to award plaintiff the reasonable attorneys' fees it incurred opposing Defendants' Motion For Rule 11 Sanctions [Docket #28].  On September 17, 2010, before filing this motion, plaintiff's lead counsel (Martin Harris) met and conferred by phone with one of defendants'

lawyers (Matthew Durham).  Mr. Harris explained the basis for this motion for fees, then requested that defendants avoid the need for this motion by withdrawing their ill-founded Motion For Rule 11 Sanctions.  However, defendants declined.

Under Rule 11, attorney fees may be awarded to *any* "prevailing party," including one who successfully *opposes* a Rule 11 motion.  FRCP 11(c)(2).  Here, defendants should be required to pay plaintiff's attorney fees for several reasons:  (1) their motion is grossly unfounded; (2) their motion misrepresents the holdings of multiple cases; (3) it misrepresents facts, too; and (4) it seems likely that defendants had ulterior motives for filing that motion.

Further reasons and authorities supporting this Motion are set forth in two documents, both of which are incorporated by reference:  (a) the Points & Authorities accompanying this Motion; and (b) Plaintiff's Points And Authorities Opposing Rule 11 Sanctions, which was filed on the same day as this motion (Sept. 17, 2010).

                Respectfully submitted,

                 _s/ Martin Harris_____
                Martin Harris
                HARRIS & AFFILIATES Ltd
                515 N. State – Suite 1805
                Chicago, IL 60654
                (312) 644-1800
                marty@mharrislaw.com

                Erik F. Stidham
                HOLLAND & HART LLP
                101 S. Capitol Blvd. – Suite 1400
                Boise, ID  83702
                (208) 342-5000
                efstidham@hollandhart.com

                Attorneys for MetLife Bank, N.A.

Erik F. Stidham (ISB #5483)
Scott Randolph (ISB #6768)
HOLLAND & HART LLP
101 S. Capitol Blvd., Suite 1400
P.O. Box 2527
Boise, ID  83701-2527
Phone: (208) 342-5000
Facsimile:  (208) 343-8869
efstidham@hollandhart.com

Martin Harris (pro hac vice application pending)
HARRIS & AFFILIATES Ltd
515 N. State – Suite 1805
Chicago, IL 60654
Phone:  (312) 644-1800
Facsimile:  n / a
marty@mharrislaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| **MetLife Bank, N.A.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 1:10-CV-00118-CWD** |
| v. ) | |
| ) | |
| **John Badostain;  Jon L. Lewis;** ) | |
| **Brian J. Neville;  Michael D. McLean;  &** ) | **Plaintiff's Points And Authorities** |
| **Eagle Home Mortgage, LLC,** ) | **Supporting a Fee Award** |
| ) | |
| **Defendants.** ) | |

Under Rule 11, attorney fees may be awarded to *any* "prevailing party," including one who successfully *opposes* a Rule 11 motion.  FRCP 11(c)(2).  E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (italics added)  ("the court can award reasonable expenses to

3

the prevailing party, including attorney's fees, incurred in presenting *or opposing* the [Rule 11] motion") (in that case the court declined to award fees, but warned: this "Rule 11 motion teeters as close as it can approach, without crossing over, to the borderline of being sanctionable itself"); Gaiardo v. Ethyl Corp., 835 F.2d 479, 485 (3d Cir. 1987) (lawyers who file unfounded Rule 11 motions "invite retribution from courts, which are far from enchanted with such abusive conduct. A court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose").

Here, defendants should be required to pay plaintiff's attorney fees for several reasons: (1) their motion is grossly unfounded; (2) their motion misrepresents the holdings of multiple cases; (3) it misrepresents facts, too; and (4) it seems likely that defendants had ulterior motives. Each of these grounds is explored below.

### A.   Defendants' Motion Misrepresents the Holdings of Multiple Cases

The most critical legal issue posed by defendants' Rule 11 Motion is as follows: does circumstantial evidence qualify as "evidentiary support," within the meaning of Rule 11(b)(3)? Defendants address this issue on pages 11-13 of their Motion (in Section A-1). In that section, they cite 4 cases. They claim that according to those 4 cases, a plaintiff should be sanctioned under Rule 11 if it relies on evidence that is "merely circumstantial," unless it "specifically identify[ing] that allegation" as lacking "evidentiary support." (Defendants' Motion, p. 12).

That is a blatant misrepresentation. Not one of the cited cases remotely supports that view. To the contrary, in all 4 cases, sanctions were *denied* (or *reversed* on appeal). Further, to the extent these cases say anything about circumstantial evidence, they *uphold* it as a valid type of "evidentiary support" that satisfies Rule 11. Here is a brief summary of these cases:

- Lebovitz v. Miller, 856 F.2d 902 (7th Cir. 1988) (*reverses* sanctions). In this case, the "sanctions [issue] really involve[d] the reasonableness of inferring, from the facts [plaintiff knew], ... that Miller was a party to [the other defendants'] scheme." Id. at 905.  The Court reversed an award of Rule 11 sanctions, despite plaintiff's lack of direct evidence, because "the sequence of events . . . permit[s] a **reasonable inference** that some wrongdoing was afoot," and that is all Rule 11 requires.  Id at 906 (emphasis added).

- Brubaker v. Richmond Financial Holding Co., 943 F.2d 1363 (4th Cir. 1991) (*reverses* sanctions).  The "evidence permitted [plaintiff] to **draw an inference**, albeit a weak one, that [defendant] was involved in a scheme," in part because it was **"reasonable to *assume*"** certain facts.  Id. at 1377 (emphasis added).  That satisfies Rule 11, because "for Rule 11 purposes, the allegation merely must be supported by *some* evidence," not by a preponderance.  Id. at 1377.

- Christian v. Mattel, Inc., 286 F.3d 1118 (9th Cir. 2002) (*reverses* an award of sanctions on other grounds, unrelated to the merits).  This case never discusses the propriety of relying on inferences drawn from circumstantial evidence, as opposed to direct evidence, so it is irrelevant to the present motion.

- Harding Univ. v. Consulting Services Group, Inc., 48 F. Supp. 2d 765, 769 (N.D. IL 1999) (*denies* motion for sanctions) ("a sanction will not be imposed [under Rule 11] unless a specific allegation is utterly void of support").

**B.     Defendants' Motion Misrepresents Facts, Too**

Without attempting to cover all instances in which this occurred, here are three examples:

● **Badostain's Declaration**. According to defendants, this declaration conclusively proves that both Badostain and Lewis stayed completely out of Eagle's decisions to hire plaintiff's loan officers.  (Defs' Motion, p. 7) ("they were in no way involved in the process").  As to Lewis, however, Badostain's declaration merely says that "*to my knowledge,*" Lewis did not participate in those decisions.  (Badostain, ¶10).  That is hardly conclusive, especially since

5

Badostain insists he (Badostain) was not personally involved, either. *If* that description of his own role is true, then he would have no way of knowing whether or not Lewis was involved.

Further, defendants have not disclosed *who* supposedly made these *decisions*, in lieu of having Lewis and Badostain make them (since it is normally part of their job duties). Badostain says Eagle " set up a procedure" for having someone (*unidentified*) at corporate headquarters "*process* the job applications" from plaintiff's employees. (Badostain, ¶10). Leaving aside administrative tasks such as processing applications, though, he never says who made the hiring *decisions*. Badostain's declaration is also completely silent regarding what role, if any, he played in *suggesting* that Eagle recruit plaintiff's loan officers and branch managers. It leaves open the real possibility that even if he avoided *personal contact* with plaintiff's employees, he still played a role *behind the scenes* in approving, initiating, or facilitating their hirings.

● **DeMaio's Letter**. Defendants' theory of the case focuses on changes in plaintiff's compensation plan. According to Defendants' Brief, plaintiff's CEO, Donna DeMaio, told all of plaintiff's loan officers that if they didn't like the new compensation plan, they should look for jobs elsewhere (emphasis added):

> [I]n a letter from MetLife's CEO Donna DeMaio to all MetLife [Bank] employees *regarding* the changes to the **compensation system** and other changes that were unpopular among the loan officers, Ms. DeMaio wrote, "Embrace change. The alternative is unappealing." This letter told loan officers that if they were not on board with the changes MetLife was taking to enhance MetLife's profitability, "then you might want to consider other options."

(Defs' Brief, p. 6) (citing Defendants' Exhibit 2-A). That is a blatant misrepresentation.

DeMaio's email (Exh. 2-A) never mentions anything about the *compensation plan*. Not once. The "changes" she describes refer to: (a) new laws and regulations, imposed due to the national mortgage crisis; and (b) MetLife Bank tightening its rules, to crack down on "UNETHICAL and DISHONEST" *lending practices*. (Exh. 2-A, p. 4). The employees who

6

should "consider other options" are those who refuse to go along with new lending standards, people who "DON'T THINK THE RULES APPLY TO THEM." (Exh. 2-A, p. 4). Exhibit 2-A never suggests that loan officers should leave if they dislike the new *compensation plan*.

Defendants *know* they misrepresented what this email says. In a conversation between counsel, plaintiff's attorney pointed out that DeMaio's email never mentions the compensation plan, then accused defendants of "taking it out of context." (Harris, ¶12). Defendants' lawyer did not even try to justify the misrepresentation regarding Exh. 2-A. Instead, he replied, in effect (paraphrasing), "whether or not that one is a little out of context, similar statements by Pete Brown clearly addressed the compensation plan." (Harris, ¶12).

● **"50% of Plaintiff's Loan Officers Quit."** In their *draft* brief, defendants alleged that plaintiff's new compensation plan was so unpopular, nearly 50% of its loan officers have quit within the past few months:

> In October 2009 [just before the new compensation plan took effect], MetLife employed nearly 1300 loan officers. Eagle has been informed that MetLife currently employs only approximately 700 loan officers. . . . [The others] resigned from MetLife as a result of its new business model. . . .

(Exh. F, p. 6). During the safe harbor period, plaintiff informed defendants that the "700 figure" is "nowhere close to accurate." (Exh. H, p. 6). During a meet-and-confer, plaintiff's counsel added that in response to discovery, plaintiff would produce documents showing that it still employs more than 1,000 loan officers. (Harris, ¶11). *See also* (Mustach, ¶9). Defendants' lawyer conceded that defendants lack proof of the 700 figure, so he agreed to "remove [that] allegation" from defendants' Rule 11 brief – and he did so. (Durham, ¶3).

But that did not stop Badostain from including this false figure in his *affidavit* – although he carefully protected himself against perjury by acknowledging that his belief is inadmissible, as it rests solely on hearsay. (Badostain, ¶3) ("I have been informed by

7

numerous knowledgeable sources that MetLife now employees only approximately 700 loan officers ..., [but MetLife's records show the actual figures, so they] will confirm or refute [that figure]"). In short, defendants tried to *plant a seed* in the Court's mind, despite *knowing* that the 700 figure is likely false, and that Badostain's testimony is inadmissible hearsay.

### C.  Defendants' Rule 11 Motion is Grossly Unfounded

The reasons for this conclusion are extensively set forth in plaintiff's separately filed Points And Authorities Opposing Rule 11 Sanctions [Docket #31]. Without rehashing all of those arguments, here is a recap.

In their Rule 11 motion, defendants insist that plaintiff lacks evidence of "solicitations" in the classic sense: i.e., evidence that after resigning from their management jobs with plaintiff, the individual defendants actively *encouraged* or *induced* others among plaintiff's employees to apply to Eagle. However, the non-piracy agreements at issue here are much broader than that. They also prohibit defendants from *facilitating* an employee's departure in any way, such as by "approv[ing Eagle's] hire" of any MetLife Bank employee, or "suggest[ing that Eagle] contact" plaintiff's employees to "discuss or mention [any] job opportunity." (Exh. A).

There is circumstantial evidence that Badostain and Lewis approved multiple hirings of plaintiff's employees in Idaho. For example, by virtue of their positions with Eagle, in the normal course of their duties, Badostain and Lewis are responsible for approving all hirings at Eagle's branches in Idaho. Since this is part of their normal duties, it is reasonable to infer that Badostain and Lewis, directly or indirectly, approved the hirings which actually occurred here.

This circumstantial evidence is more than enough to satisfy Rule 11's requirements. Rule 11 requires an attorney to conduct a "reasonable investigation" to verify that "factual contentions" in a pleading have "evidentiary support." FRCP 11(b)(3). An attorney satisfies this duty by confirming that **"*some* evidence"** supports his client's position, Brubaker v. Richmond

Financial Holding Co., 943 F.2d 1363, 1377 (4th Cir. 1991), even if that evidence is "weak." Calif. Architectural Bldg. Prods. v. Franciscan Ceramics, 818 F.2d 1466, 1473 (9th Cir. 1987).  *See also* Stiglich v. Contra Cost Bd. Of Supervisors, 1997 U.S. App. LEXIS 897, *21 (9th Cir. 1997) (Rule 11 sanctions cannot be imposed unless the "factual contentions **entirely lack** evidentiary support") (emphasis added); Storey v. Cello Holdings, 347 F.3d 370, 388 (2d Cir. 2003) ("with regard to factual contentions, [Rule 11] 'sanctions may not be imposed unless [the] allegation is **utterly lacking** in support'.") (emphasis added); Harding, 48 F. Supp. 2d at 769 (N.D. IL 1999) ("a sanction will not be imposed unless [the] allegation [at issue] is **utterly void** of support") (emphasis added).

Defendants' contrary view rests mainly on a fundamental misconception about Rule 11.  According to defendants, any time a party relies on inferences drawn from circumstantial evidence, it lacks "evidentiary support"; therefore, it must "specifically" plead that its allegation rests solely on inferences.  (Defs' Motion, p. 12).  That view is dead wrong.  Not one case cited by defendants supports it, while numerous cases reject it.  Calif. Architectural Bldg. Prods., 818 F.2d at 1473 (9th Cir. 1987) (*reverses* Rule 11 sanctions, because the "circumstantial evidence" satisfied Rule 11); Lucas v. Duncan, 574 F.3d 772 (D.C. Cir. 2009) (under Rule 11, "circumstantial evidence," is not treated any differently than "direct evidence") (*reverses* Rule 11 sanctions on this ground).  *See also* Rounseville v. Zahl, 13 F.3d 625, 633 (2d Cir. 1994) (*reverses* sanctions, because "the available circumstantial evidence could plausibly support the inference that there was a conspiracy"); Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir. 1988) (same).

The remainder of defendants' argument involves trying to "outweigh" or "negate" plaintiff's circumstantial evidence, by presenting contrary evidence.  That approach is misguided for several reasons.  First, Rule 11 does not require that a preponderance of evidence support the

9

allegation, or even that the overall evidence be sufficiently balanced as to raise a genuine dispute (precluding summary judgment).  As long as *any* evidence supports it, including circumstantial evidence, the Rule 11 inquiry ends.  Second, the declarations on which defendants rely for this argument cannot even be considered.  During the safe harbor period, defendants deliberately refused to give plaintiff a copy of those declarations (not even an unsigned draft), despite at least two written requests / reminders.  *See* (Docket #31, pp. 11-12, 15-16).  Third, plaintiff is entitled to test the allegations in those declarations, by taking depositions and other discovery, to see if they are misleading, incomplete, or downright false.  At this early stage of the case, plaintiff is not required to accept Badostain's declaration as the "final word," especially when, as here, it consists of sweeping generalizations and legal conclusions, while providing very few details.

For these reasons and others (which are set forth in greater detail in Docket #31, and incorporated here by reference), defendants' Rule 11 Motion is patently frivolous.

### D. Defendants Likely Had Ulterior Motives for Filing Their Rule 11 Motion

Much of Defendants' Brief is devoted to arguing *their* theory of the case:  i.e., plaintiff's loan officers left not because Badostain or Lewis solicited them, but because they were unhappy about changes in plaintiff's compensation plan, along with other aspects the working conditions at MetLife Bank.  This entire argument is a red herring. It refutes a phantom or "straw man"; i.e., an accusation plaintiff is not making.  Based on the evidence available so far, plaintiff does not contend that Badostain or Lewis violated their non-piracy agreements by "actively soliciting" the loan officers, in the sense of *personally* initiating contact with them to try to persuade them to leave.  Rather, plaintiff contends that they violated the non-piracy agreements by approving hirings, or suggesting that Eagle contact people; i.e., by acting behind the scenes.

Before they filed their Rule 11 motion, defense counsel knew what plaintiff's claim does and does not involve.  Plaintiff's counsel stressed this point during the meet-and-confer, and defense counsel acknowledged his understanding.  (Harris, ¶5) and (Defs' Motion For Rule 11 Sanctions, p. 11) and (Exh. D).

Why, then, did defendants devote 20% of their Motion, including 4 of the first 5 pages, to rebutting a theory that plaintiff is not advocating?  Why did they spend so much time arguing that Badostain and Riley did not need to actively solicit plaintiff's loan officers, because supposedly those loan officers already disliked working for plaintiff?  It appears defendants are using this Rule 11 motion to try to gain a tactical advantage, even if that entails knowingly making irrelevant arguments, just to give them an "excuse" to put certain allegations in front of the Court early in the case.  Unfortunately, such abuses of Rule 11 are common. Gaiardo, 835 F.2d at 484 (there is a "growing tendency" to "abus[e]" Rule 11 by using it for ulterior purposes; "The Rule is being perverted . . . by some [law] firms and their clients").

Defendants sometimes (mis)use Rule 11 motions as a vehicle to start *conditioning the court* to buy into their theory of the case; i.e., to influence the Court's *first impression* of the case.  Wartsila NSD N. America, Inc. v. Hill Int'l, Inc., 315 F. Supp. 2d 623, 628 (D.N.J. 2004) ("even if a Rule 11 motion is ultimately denied, the moving party may be effectively rewarded if the motion is allowed to lead the Court into a searching evaluation of the merits of a case"); E. Gluck Corp., 252 F.R.D. at 179 (S.D. N.Y. 2008) ("in many respects th[is Rule 11] motion is grounded on matters that go to the merits of the parties' dispute[, not to the appropriateness of Rule 11 sanctions]. . . . [That] is not only premature but entails a misuse of Rule 11 that could be especially detrimental").  That may be defendants' goal here.  Eventually, when this case reaches summary judgment and trial, defendants will need to argue that the loan officers would have quit

anyway – not to defend against the claim their Rule 11 motion addresses, but to defend against *other claims*, such as breach of fiduciary duty.

Alternatively, defendants may hope to gain an edge by conditioning the Court in a second way. In responding to a Rule 11 motion, plaintiff necessarily argues that it has "at least some support" for its allegations. That is the applicable legal standard, so that is all plaintiff should argue here. Still, such defensive-sounding language might create a first impression in the Court's mind that plaintiff's case is weak, even when it really is strong.

Some defendants also use a Rule 11 motion to "test" a plaintiff's case. Wartsila, 315 F. Supp. 2d at 628. They may calculate that when forced to defend against a threat of sanctions, a typical plaintiff's lawyer will disclose his theory of the case, and his supporting evidence, far more fully and clearly than he might do in response to written discovery requests. In short, Rule 11 can be misused as a "discovery device." Wartsila, 315 F. Supp. 2d at 628. That theory is plausible here, especially as defendants stonewalled discovery and delayed depositions for several months. As a result, in preparing for those depositions, defendants now can take full advantage of anything they learn about plaintiff's case through their Rule 11 motion.

Finally, of course, many defendants use Rule 11 motions as an intimidation tactic, hoping to scare the opposing party or counsel into dropping its claims, or settling cheaply. Gaiardo, 835 F.2d at 485 ("the use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients"). Here, in the cover letter accompanying their Rule 11 threat, defendants suggested that to avoid Rule 11 sanctions, plaintiff should settle for nothing but a face saving token. (Exh. E, p. 4) ("there are compelling substantive and practical reasons for MetLife to make a graceful exit from this litigation. If MetLife is interested, we would be happy to discuss logistics").

If the Court finds that any of these ulterior motives were present here, it certainly should award plaintiff the fees it incurred opposing this motion.  But even if the Court does not find that defendants had improper motives, it still can award fees to plaintiff:  based on the utter lack of merit in defendants' motion, and/or the multiple misrepresentations defendants employed to try to obtain sanctions.  E.g.:

> [B]ecause . . . the allegations in the present [Rule 11] motion are untenable, misplaced, inappropriate for a Rule 11 motion, or simply inexplicable . . . the Plaintiff will be awarded the costs associated with responding to this motion as the prevailing party under Rule 11(c)(1)(A).  [A motion for] Rule 11 sanctions [is] properly deployed only in exceptional circumstances, this is not such a circumstance.

Wartsila, 315 F. Supp. 2d at 630.  Plaintiff respectfully submits that the same conclusion should be reached here.

## CONCLUSION

The Court should award plaintiff the attorneys' fees it incurred in opposing defendants' unfounded, and ill-advised, Rule 11 motion.

Respectfully submitted,

_s/ Martin Harris_____
Martin Harris
HARRIS & AFFILIATES Ltd
515 N. State – Suite 1805
Chicago, IL 60654
(312) 644-1800
marty@mharrislaw.com

Erik F. Stidham
HOLLAND & HART LLP
101 S. Capitol Blvd. – Suite 1400
Boise, ID  83702
(208) 342-5000
efstidham@hollandhart.com

Attorneys for MetLife Bank, N.A.

## Certificate of Service

I certify that on this 17th day of September, 2010, the foregoing Plaintiff's Motion For An Award Of The Fees It Incurred Opposing Rule 11 Sanctions, along with the accompanying Points And Authorities, was served on defendants via the Court's ECF system, through their attorneys of record:

| | |
|---|---|
| Matthew T. Christensen<br>ANGSTMAN JOHNSON<br>3649 Lakeharbor Lane<br>Boise, ID  83703 | Jeffrey K Brown<br>PAYNE & FEARS LLP<br>4 Park Plaza #1100<br>Irvine, CA 92614 |
| J. Kelby Van Patten<br>PAYNE & FEARS LLP<br>7251 W. Lake Mead Blvd., Suite 525<br>Las Vegas, NV  89128 | Matthew L. Durham<br>PAYNE & FEARS LLP<br>7251 Lake Mead Blvd #525<br>Las Vegas, NV 89128 |

        _____s/ Martin Harris_____
        One of the attorneys for plaintiff