# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| METLIFE BANK, N.A.,<br><br>        Plaintiff,<br><br>  v.<br><br>JOHN BADOSTAIN, JON L. LEWIS, BRIAN J. NEVILLE, MICHAEL D. MCLEAN, and EAGLE HOME MORTGAGE, LLC,<br><br>        Defendants. | Case No. 1:10-CV-118-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Defendants John Badostain, Jon Lewis, and Eagle Home Mortgage, LLC, filed a motion requesting that the Court impose sanctions against Plaintiff MetLife Bank under Rule 11 of the Federal Rules of Civil Procedure. (Dkt. No. 28). Defendants contend that sanctions are warranted in this case because the factual allegations contained in Plaintiff's complaint "have absolutely no evidentiary support," Mot. For Rule 11 Sanctions at 2, and that the appropriate sanction in this case is for the Court to strike Plaintiff's allegedly unsupported claims. *Id*., at 4. Plaintiff opposes the motion and has filed a Motion for an Award of the Fees It Incurred Opposing Rule 11 Sanctions (Dkt. No. 32), and a Motion to Strike the Declarations Attached to Defendants' Motion for Rule 11 Sanctions (Dkt. No. 33).

The Court heard arguments from counsel on the motions on November 30, 2010. During the hearing, it was brought to the Court's attention that a substantively identical motion for sanctions was filed by counsel for Defendants in a related case pending in the United States District Court for the District of Nevada and that the motion was denied because "Defendants failed to comply with the strict procedural requirements of the safe harbor provision in Rule 11." See *MetLife Bank, N.A. v. Riley*, 3:10-cv-122-ECR-VPC, at 6 (D. Nev. Oct. 13, 2010). The Court is not amused by what has been accurately characterized as an ongoing "Rule 11 war" between the parties, and the Court is particularly displeased that the motion for sanctions before this Court was not withdrawn after United States Magistrate Judge Valerie Cooke denied the same motion in the District of Nevada based on Ninth Circuit precedent governing Rule 11's safe harbor provision.

Having fully reviewed the parties' submissions and considered their arguments during the hearing, for the reasons discussed below, the Court will deny Defendants' Motion for Rule 11 Sanctions, grant Plaintiff's fee motion, and deny Plaintiff's Motion to Strike.

## Factual and Procedural History

In 2008, MetLife Bank, N.A. ("MetLife") acquired First Horizon Home Loans and become involved in the home mortgage business. John Badostain acted as MetLife's Regional Sales Leader, overseeing the company's branches in the Mountain West Region, which included all of MetLife's Idaho branches. While employed by MetLife, Mr.

Badostain's office was located in Eagle, Idaho. Jon Lewis was employed by MetLife as a District Sales Leader, overseeing the company's branch managers throughout the state of Idaho. While employed by MetLife, Mr. Lewis's office was also in Eagle, Idaho, and he reported to Mr. Badostain. Brian Neville worked as the branch manager of MetLife's Eagle branch and Michael McLean worked as the branch manager of MetLife's McCall branch. Both Messrs. Neville and McLean reported to Mr. Lewis.

While employed as managers by MetLife, each of the above individual defendants signed a non-piracy agreement, which provides in part:

> For 18 months following the termination of my employment with MetLife for any reason:
> . . .
> I will not solicit any employee of MetLife or its affiliated entities ("Employee") to become employed, associated, or contracted by or with me or any entity in which I become an employee, owner or investor ("Other Company"). I will not solicit any Employee to become employed, associated or contracted with an organization providing services to me or any Other Company. For example, I will not inform an Employee of a job opportunity with me or any Other Company, or suggest that any person or entity contact an Employee to discuss or mention such a job opportunity. I also will not interview an Employee for a job, or offer, authorize, approve or agree to hire an Employee for any job opportunity with me or any Other Company.

Pl.'s Compl. at 2 (Dkt. No. 1).

In late November or early December 2009, both John Badostain and Jon Lewis resigned their positions with MetLife and shortly afterwards accepted comparable positions with Eagle Home Mortgage, LLC ("Eagle"). MetLife's Complaint alleges that,

after leaving MetLife, Mr. Badostain became the Vice President or regional manager at Eagle, "with responsibility for overseeing mortgage home loan branches in a region that covers several states, including Idaho [and] . . . his responsibilities include hiring, and/or approving the hiring, of loan officers at branches within his region." Pl.'s Complaint at 5. Concerning Defendant Jon Lewis, MetLife's Complaint alleges that he now holds a managerial position with Eagle in which he supervises the branch managers at the company's branches throughout Idaho, and "[w]ithout limitation, his responsibilities include hiring, and/or approving the hiring, of loan officers at Eagle's branches in Idaho." *Id*.

Between January 20, 2010, and February 1, 2010, all seven loan officers employed by MetLife in its Eagle, Idaho, branch resigned. During the same time period, five of the seven loan officers employed at MetLife's Meridian branch resigned. Finally, one day after Defendant Michael McLean resigned as MetLife's McCall branch manager, both of the loan officers whom he was supervising resigned. MetLife alleges that John Badostain and Jon Lewis participated in the hiring of these loan officers for Defendant Eagle, stating "[e]ach of these defendants solicited these loan officers to join Eagle; hired, authorized the hire, or approved the hire by Eagle of these loan officers; participated in extending job offers to them; participated in interviewing them for Eagle or suggested that others interview them for positions at Eagle; and/or informed them of job opportunities at Eagle." Pl.'s Compl. at 6.

On March 2, 2010, MetLife filed a Complaint against John Badostain, Jon Lewis,

Brain Neville, Michael McLean, and Eagle.  MetLife's Complaint alleges that, after the

individual defendants left MetLife, they (with Eagle's assistance) caused a "mass exodus"

from MetLife branch offices in Idaho in violation of the non-piracy agreement by

soliciting and hiring MetLife employees.  MetLife claims that these actions constitute

tortious interference by Eagle and breach of contract by the individual defendants.

On July 16, 2010, following initial discovery, Defendants sent Plaintiff MetLife

notice of their intent to file a motion for Rule 11 sanctions and a draft of the motion.[1]

Defendants informed MetLife that they intended to move for sanctions under Rule 11

because the complaint included factual contentions that had no evidentiary support.  The

draft motion sent to MetLife was unsigned and the declarations on which the motion

relies were not provided to MetLife.  MetLife states that it twice requested the

declarations from the Defendants, but that both requests were refused. Pl.'s Opp. to Mot.

For Sanctions at 11-12 (Dkt. No. 31).  According to Defendants, following the notice of

intent to file a motion seeking sanctions, MetLife conceded that its claims against

Defendants Brian Neville and Michael McLean for breach of contract lacked merit. Def.s'

Reply in Supp. of Mot. For Sanctions at 1 (Dkt. No. 35).  MetLife has not, however,

withdrawn its claims against Defendants John Badostain, Jon Lewis, and Eagle.

In response to Defendants' motion for sanctions, MetLife filed its Motion for an

---

[1]  Fed. R. Civ. P. 11(c)(2) requires a party seeking sanctions to first serve the motion on the opposing party, and then wait 21 days before filing the motion with the Court in an effort to allow the non-moving party to consider whether to withdraw the allegedly sanctionable allegations.  This is known as Rule 11's "safe harbor" provision.

Award of the Fees It Incurred Opposing Rule 11 Sanctions. (Dkt. No. 32).  MetLife

contends that Defendants' motion for sanctions lacks merit and that MetLife should be

awarded fees as the "prevailing party" under Rule 11(c)(2).  MetLife also contends that

Defendants' motion misrepresents the holdings of multiple cases, misrepresents facts, and

"it seems likely that defendants had ulterior motives for filing th[e] motion." Pl.'s Mot.

for an Award of Fees at 2 (Dkt. No. 32).  Finally, MetLife also filed a Motion to Strike

All Declarations Attached to Defendants' Motion for Rule 11 Sanctions. (Dkt. No. 33).

MetLife contends that the declarations cannot be considered in support of the motion for

sanctions because Defendants refused to provide a copy of them to MetLife prior to filing

the motion for Rule 11 sanctions with the Court.

## DISCUSSION

### 1. Motion for Rule 11 Sanctions

Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the *factual contentions have evidentiary support* or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3) (emphasis added).  Defendants argue that sanctions are warranted

in this case because the factual contentions contained in MetLife's Complaint have no evidentiary support. Defendants request that the Court strike the factual allegations lacking evidentiary support from MetLife's Complaint and to strike the causes of action that are premised on these allegations. MetLife concedes its claims against Messrs. Badostain and Lewis rely on circumstantial evidence at this early stage in the litigation, but contends that the circumstantial evidence presented is sufficient for the purposes of Rule 11(b)(3). MetLife also argues that Defendants failed to comply with the procedural requirements of Rule 11 and that the motion for sanctions is procedurally barred.

### A. *Rule 11's "safe harbor" provision*

Rule 11 requires that a party filing a motion for sanctions must serve the motion on the opposing party 21 days before filing the motion with the Court. Fed. R. Civ. P. 11(c)(1)(A) ("A motion for sanctions under this rule . . . shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper . . . is not withdrawn or appropriately corrected."). This is Rule 11's "safe harbor" provision.

The Ninth Circuit has held that the procedural requirements of Rule 11(c)(1)(A) are mandatory and that the safe harbor provision must be enforced strictly. *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("We must reverse [an] award of sanctions [if the moving] party failed to comply with the safe harbor provisions."); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788-789 (9th Cir. 2001) ("Rule 11(c)(1)(A) provides strict procedural requirements for parties to follow when they move for sanctions . . . . To

comply with the Rule, [the moving party] was required to serve its Rule 11 motion on the plaintiffs with a demand for retraction of the allegedly offending allegations.").

The question is whether the service of a draft motion, unaccompanied by supporting declarations relied upon in the motion, constitutes service of the "motion" within the meaning of Rule 11(c)(1)(A). Ninth Circuit precedent suggests that it is not. In *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1999), the Ninth Circuit held that informal warnings to the opposing party do not satisfy the procedural requirements of Rule 11. And in *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1151 (9th Cir. 2002), the Ninth Circuit stated that Rule 11 contemplates the service of a "*filing-ready motion*" 21 days prior to filing the actual motion with the court. The requirement that the motion be "filing-ready" comports with the Advisory Committee's stated purpose of the safe harbor provision, which is "[t]o stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule."

MetLife argues that the 21 day safe harbor provision was never triggered because the motion served by the Defendants was procedurally deficient; it was an unsigned draft and did not contain the declarations later provided to the court with the actual motion. Thus, MetLife contends that under the text of Rule 11(c)(1)(A), the applicable advisory committee notes, and Ninth Circuit precedent, this Court should deny the motion for sanctions on procedural grounds.

As noted in the introduction, the Court learned during the hearing on the parties' motions that a virtually identical motion for sanctions was filed by defense counsel in a

related case pending in the United States District Court for the District of Nevada. Like

the case now before the Court, the Nevada case involves a suit by MetLife against John

Badostain and other defendants for breach of the same non-piracy agreement at issue in

this case. On July 16, 2010, counsel for Defendants provided MetLife with draft motions

for Rule 11 sanctions relating to both cases. The draft motions were substantively

identical; both alleged that counsel for MetLife violated Rule 11 by filing complaints

containing factual contentions without evidentiary support. In both cases, defense

counsel did not provide MetLife with the supporting declarations referenced in the

motions. Furthermore, after receiving the draft motions, counsel for MetLife requested

copies of the declarations relating to both cases, but did not receive the declarations until

August 20, 2010, when the motions were filed in the District of Nevada and with this

Court.

Both motions sought the dismissal of MetLife's allegedly factually unsupported

claims. And, in both cases, MetLife filed motions for attorney's fees and to strike the

declarations attached to defendants' motions. For all intents and purposes, the same

motions currently pending before this Court were filed at the same time in the District of

Nevada. Judge Cooke issued her order in the District of Nevada case on October 13,

2010, and the order was provided to this Court as an attachment to a declaration filed by

MetLife's counsel on October 19, 2010. See Dec. Of Scott E. Randolph, Ex. A (Dkt. No.

38).

Judge Cooke denied both parties' motions without a hearing. *MetLife Bank, N.A. v.*

*Riley*, 3:10-cv-122-ECR-VPC (D. Nev. Oct. 13, 2010). Relying on the statements by the Ninth Circuit that Rule 11's safe harbor provision contemplates the service of a "filing-ready" motion to the opposing party 21 days prior to the filing of the motion with the court,[2] and that the procedural requirements contained in Rule 11 must be strictly enforced,[3] Judge Cooke found that the defendants' failure to provide the declarations referenced in the draft motion for sanctions did not comply with Rule 11's safe harbor provision and therefore denied defendants' motion on procedural grounds. *MetLife*, 3:10-cv-122-ECR-VPC, at 3-5.

Judge Cooke also expressed concern that counsel for defendants failed to provide the declarations after MetLife specifically requested them. *Id*., at 5 ("The court cannot conceive of a reason that defendants declined to provide the declarations referenced in their draft motion upon plaintiff's requests, but hopes that such conduct does not reflect a deliberate attempt to impede cooperation between the parties. Such tactics do not advance litigation and often result in acrimonious disputes between parties regarding tangential matters."). The court further noted that, given the extreme sanction sought by the defendants, including the dismissal of MetLife's claims, MetLife was entitled to "the benefit of consideration of a complete motion for sanctions for the twenty-one day safe harbor period." *Id.* However, Judge Cooke denied MetLife's motion for fees incurred in

---

[2]     *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1151 (9th Cir. 2002).

[3]     *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).

opposing the motion, finding no indication that Defendants had filed the motion in bad faith or for any nefarious purpose.

Defendants' counsel suggested during the hearing before the Court on November 30, 2010, that Judge Cooke may not have denied the motion on procedural grounds if oral argument had been allowed. The Court will not speculate whether Judge Cooke's decision would have been different if she had entertained oral arguments. The Court, however, does find the reasoning in Judge Cooke's Order sound and the legal authorities persuasive, and reaches the same conclusion based on the facts before the Court. Defendants' counsel should have provided the declarations upon which its motion for sanctions relied at the time the draft motion was served or, if after the draft motion, to allow a full 21 days for MetLife to consider them before filing the motion. Failure to do so violated the procedural requirements contained in Rule 11, as without the supporting declarations, Defendants' motion cannot be considered "filing ready."[4]

Based on the above, the Court will deny Defendants' Motion for Rule 11 Sanctions on procedural grounds. However, as explained more fully below, given the fact that the Court also finds MetLife is entitled to fees incurred in opposing Defendants' motion, the

---

[4] Defense counsel's explanation that he did not serve the declarations with the draft motion because they had not been signed by the declarants does not excuse the failure to comply with the procedural requirements of Rule 11. Given the extreme sanctions sought by Defendants, there was no reason why defense counsel could not delay filing the motion with the court 21 days after MetLife's counsel was provided with the declarations in support of the motion. Counsel for Defendants took the risk of erring in his interpretation of Rule 11's safe harbor requirements by not providing the supporting documents to the Plaintiff.

Court will proceed to the analysis of the substantive merits of Defendants' motion for sanctions.

**B. *Merits of Defendants' Motion for Sanctions***

Rule 11 makes clear that, when an attorney files a paper with the court, he or she certifies that any factual contentions made have evidentiary support. See Fed. R. Civ. P. 11(b)(3). An attorney satisfies his or her burden under Rule 11 by confirming that "some evidence" supports his or her client's claims. *Brubaker v. Richmond Financial Holding Co.*, 943 F.2d 1363, 1377 (4th Cir. 1991) ("For Rule 11 purposes, the allegation merely must be supported by *some* evidence. Because we are unable to say that plaintiffs had *no* factual basis for their allegation, we cannot conclude that plaintiffs violated Rule 11's factual inquiry requirement. The district court abused its discretion by awarding sanctions.") (emphasis in original). The standard is not a high one. See *Calif. Architectural Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987) (reversing an award of sanctions where, although the evidence was weak and could not survive summary judgement, the court could not "say that the complaint [was] so lacking in plausibility as to . . . subject [the attorney] to sanctions under Fed.R.Civ.P. 11"). "Rule 11 sanctions are appropriate if the allegations and other factual contentions entirely lack evidentiary support." *Stiglich v. Contra Costa County Bd. Of Supervisors*, 1997 U.S. App. LEXIS 897 (9th Cir. 1997).

For the purposes of Rule 11, "circumstantial evidence," and the reasonable

inferences drawn from that evidence, are treated as "evidentiary support." *Lucas v.*

*Duncan*, 574 F.3d 772 (D.C. Cir. 2009) ("'Inferences'–which are commonly described as

'circumstantial evidence'–are as capable of providing evidentiary support as

'facts'–which are commonly described as 'direct evidence.'") (citing *U.S. Postal Serv.*

*Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983)); *Rounseville v. Zahl*, 13 F.3d

625, 633 (2d Cir. 1994) (reversing sanctions where "the available circumstantial evidence

could plausibly support the inference that there was a conspiracy").

MetLife asks that the Court follow the reasoning adopted by the D.C. Circuit in

*Lucas v. Duncan*, 574 F.3d 772 (D.C. Cir. 2009). *Lucas* involved an employment

discrimination suit. The plaintiff alleged that, at the relevant time, he was 61 years old

and had a law degree and more than 25 years' experience in the relevant field. He further

alleged that he was passed up for a promotion, which was given to a 43-year-old high

school graduate, who had never attended college and who had previously worked as the

plaintiff's secretary. *Id*., at 773-774. Plaintiff relied on this circumstantial evidence in

support of his claim that his employer had violated the Age Discrimination in

Employment Act. *Id*., at 774. The magistrate judge issued an order requiring plaintiff's

attorney to show cause why he should not be sanctioned for violating Rule 11(b)(3). *Id.*

The magistrate judge sanctioned plaintiff's attorney, finding that the attorney's statements

in the complaint "obliterate again and again the distinction between drawing an inference

and stating a fact and must therefore be condemned as a violation of the requirement of

Rule 11 that the factual allegations in a document have evidentiary support." *Id.* The

magistrate stated that "a classic misstatement is one in which an inference that might or

might not be drawn from the facts is stated as a fact itself." *Lucas*, 408 F. Supp.2d at 12.

The Court of Appeals in *Lucas* disagreed with the magistrate judge and reversed.

The Court of Appeals took issue with the magistrate's differentiation between inferences

drawn from circumstantial evidence and facts that provide "evidentiary support" within

the meaning of Rule 11. The court particularly took issue with the following hypothetical

posited by the magistrate judge:

> [T]hat a man walks into a room with a wet umbrella might
> permit the inference that the man was recently outside and
> that it was raining. It might also be true that the man decided
> to wash the umbrella. Given these facts, an advocate cannot
> first say "it was raining" but later, when challenged, explain
> that what was originally stated as fact was actually only an
> inference that could have been drawn from the fact that the
> umbrella was wet. The statement, "it was raining" is
> objectively false. It asks the reader to believe that what is
> merely an inference that may be drawn from a set of facts is
> itself a fact."

*Lucas*, 574 F.3d at 776. When expressing it's strong disagreement with the above

hypothetical, the court stated that "the basic legal premise upon which sanctions were

imposed was incorrect. To take the magistrate judge's example: If an attorney has

evidence that a man 'walked into a room with a wet umbrella' at a certain time, the

attorney does have 'evidentiary support' for the 'factual contention' that 'it was raining'

at that time. He may not have proof by a preponderance, but he certainly has 'support.'

**ORDER - 14**

Accordingly, a lawyer does not violate Rule 11 by saying so." *Id*., at 778-79.

Defendants assert that MetLife has "absolutely no evidentiary support" for its factual allegations. Def.s' Mot. For Sanctions at 2. Under *Lucas*, the Defendants in this case are incorrect. MetLife has presented the following circumstantial evidence: Defendants John Badostain and Jon Lewis resigned from MetLife and went to work for Defendant Eagle; in their positions at Eagle, both Messrs. Badostain and Lewis ordinarily must approve Eagle's hiring of loan officers and branch managers in Idaho; after these defendants began working for Eagle, Eagle hired more than 20 of MetLife's loan officers at branches in Idaho. This circumstantial evidence surely leads to the inference that either Mr. Badostain or Mr. Lewis or both participated in some way in the hiring of former MetLife loan officers. Although MetLife's Complaint may not contain sufficient evidence to withstand a motion for summary judgment, it does contain sufficient evidence to avoid sanctions under Rule 11, which the Ninth Circuit repeatedly has stated is "an extraordinary remedy, one to be exercised with extreme caution" and only in rare and exceptional cases. *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988); see also, *Kelter v. Associated Financial Group*, 2010 U.S. App. LEXIS 11661, *5 (9th Cir. 2010).

Based on the above analysis, the Court will deny Defendants Motion for Rule 11 Sanctions on its merits, as well as on procedural grounds.

**2. MetLife's Motion for Fees**

MetLife has filed a Motion for an Award of the Fees It Incurred Opposing Rule 11 Sanctions. (Dkt. No. 32). MetLife argues that it is entitled to fees as a "prevailing party" under Rule 11 and that it is entitled to fees for the following reasons: (1) Defendants' motion is grossly unfounded; (2) Defendants' motion misrepresents the holdings of multiple cases; (3) Defendants' motion misrepresents the facts of the case; and (4) Defendants' motion has been filed for improper motives. For the reasons discussed below, the Court finds that MetLife's second and fourth grounds provide support for an award of fees.

Rule 11(c)(2) provides that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11 (c)(2); see also, Rule 11 Advisory Committee Notes 1993 Amendments ("As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions [and] . . . under the revision the court may award to the person who prevails on a motion under Rule 11–whether the movant or the target of the motion–reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.").

### A. *Defendants' misrepresentation of the applicable case law*

One of the critical issues in this case–for the purposes of determining whether Defendants' motion for sanctions should be granted–is whether circumstantial evidence qualifies as "evidentiary support" within the meaning of Rule 11(b)(3). Defendants'

motion for sanctions cites *Lebovitz v. Miller*, 856 F.2d 902 (7th Cir. 1988), for the

proposition that "[i]f . . . evidence is merely circumstantial, such that the allegation is

based solely on reasonable inferences from the available evidence, then the party's

complaint must specifically identify that allegation as one which 'will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery.'"

Def.s' Mot. For Sanctions at 12 (quoting Fed. R. Civ. P. 11(b)(3)).  As MetLife points

out, in *Lebovitz*, the court actually reversed an award of Rule 11 sanctions, despite the

plaintiff's lack of direct evidence, because "the sequence of events . . . permit[s] a

reasonable inference that some wrongdoing was afoot." Pl.s' Mot. For Fees at 5 (quoting

*Lebovitz v. Miller*, 856 F.2d 902, 906 (7th Cir. 1988)).  Defendants concede that *Lebovitz*

does not stand for the proposition stated but claim "[they] intended to cite this case for the

proposition that if a plaintiff makes allegations in its complaint based upon inferences

drawn from circumstantial evidence, the inferences must be reasonable." Def.s' Opp. to

Pl.'s Mot. for Fees at 3 (Dkt. No. 36).  Defendants then state that "[t]he proposition was

inadvertently deleted from the rule 11 Motion, but the citation (without pinpoint or

parenthetical information) remain.  This was a simple drafting error." *Id*.

Whether the Court chooses to accept Defendants' explanation, the case cited in

Defendants' motion for sanctions does not stand for the cited proposition.  This alleged

oversight may not have been so egregious but for the fact that it is in a motion for

sanctions which, if granted, could result in the dismissal of MetLife's claims based on the

post-departure conduct of Defendants John Badostain and Jon Lewis.  Furthermore, the

Court finds it significant that the misstatement of law was called to defense counsel's

attention two weeks before the motion for sanctions was finalized and filed with the

Court.  Following Defendants' service of the draft motion, MetLife's counsel sent a letter

to Defendants' counsel challenging Defendants' understanding of the "evidentiary

support" required by Rule 11. See Mot. For Sanctions, Ex. 1(B) (Dkt. No. 28-5).  The

letter not only points out the misstated law in Defendants' draft brief concerning the

adequacy of circumstantial evidence for the purposes of Rule 11, it also specifically

quotes the offending language that Defendants now assert was left in the motion filed

with the Court due to a drafting error.  The letter is dated August 6, 2010, two weeks prior

to the date Defendants filed their motion for sanctions with the Court.

### B. *Improper Motives*

MetLife also alleges that Defendants' motion for sanctions was filed for improper

motives.  MetLife argues that much of Defendants' motion is devoted to arguing the

theory of their case, i.e., that MetLife's loan officers left the company not because they

were solicited by any of the Defendants, but because they were unhappy about the

changes in MetLife's compensation plan.  Even if Defendants' theory of the case is

correct, a motion for sanctions pursuant to Rule 11 is not the proper avenue to argue one's

case.

The Advisory Committee Notes to Rule 11 make clear that a motion for sanctions

"*should not be employed* as a discovery device or *to test the legal sufficiency or efficacy of allegations in the pleadings*; other motions are available for those purposes. *Nor should Rule 11 motions be prepared to emphasize the merits of a party's position*." Fed. R. Civ. P. 11, Advisory Committee Notes (emphasis added); see also, *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987) ("The growing tendency to extend the Rule beyond its text and intent concerns us, as does the noticeable increase in unjustified requests for sanctions. The Rule is being perverted when used as a tool for harassment rather than as an instrument to prevent abuse."); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (denying fees in opposing motion for sanctions but stating that "in many respects the motion [for sanctions] is grounded on matters that go to the merits of the parties' dispute" and "[i]n the Court's assessment, under these circumstances [the] Rule 11 motion teeters as close as it can approach, without crossing over, to the borderline of being sanctionable itself").

In this case, Defendants' motion for sanctions seemingly violates many, if not all, of the Advisory Committee's admonitions on the improper uses for a motion filed under Rule 11: the motion undeniably argues the theory of Defendants' case; and it could easily be seen as a device to test the legal sufficiency or efficacy of allegations in the pleadings because the very relief it seeks is to strike claims made in the complaint against the various defendants. Defendants certainly are entitled to challenge the sufficiency of MetLife's evidence through a motion for summary judgment once MetLife has had the

opportunity to conduct discovery. As the Advisory Committee makes perfectly clear, however, a motion for sanctions is not the proper mechanism through which a party may permissibly conduct such an inquiry.

In this case, Defendants proceeded to file their Rule 11 motion with the Court, despite the fact that MetLife addressed the otherwise potentially sanctionable conduct in part by dismissing their breach of contract claims against two of the Defendants (based on pre-departure conduct). However, in the Rule 11 motion and during the hearing on the motions, defense counsel persisted with arguing the Defendants' theory of the case–that the "mass exodus" of MetLife employees following the departure of Messrs. Badostain and Lewis was caused by MetLife's change in business policy and treatment of its loan officers rather than through a violation of Defendants' non-piracy agreement. Likewise, Defendants insisted at the hearing, and in their motion, that it is unreasonable to infer from the circumstantial evidence present in this case that Messrs. Badostain and Lewis may have a had a say in hiring decisions for Eagle.

Upon review of the record and full consideration of the parties' arguments during the hearing, the Court finds that an award of the reasonable expenses, including attorney fees, incurred in responding to the sanctions motion is warranted under Rule 11(c)(2). As the prevailing party, MetLife shall submit an affidavit of counsel comporting with Rule 54.2(b) of the Local Rules detailing the expenses and attorney fees incurred in connection with the Rule 11 motion filed by Defendants for consideration and further order of the

Court.[5]

### 3. Motion to Strike Defendants' Declarations in Support of Motion for Sanctions

MetLife also filed a Motion to Strike All Declarations Attached to Defendants' Motion for Rule 11 Sanctions. (Dkt. No. 33). MetLife reiterates that Defendants did not comply with Rule 11's safe harbor provision because it did not attach the declarations in support of its motion for sanctions when the draft motion was initially provided to Plaintiff. MetLife argues that the declarations cannot be considered in deciding the motion for sanctions and should therefore be stricken.

Given the Court's conclusion that Defendants' motion for sanctions should be denied, Plaintiff's motion to strike is rendered moot and likewise will be denied.

### ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that:**

1. Defendants' Motion for Rule 11 Sanctions (Dkt. No. 28) is **DENIED**.

2. Plaintiff's Motion for the Attorney Fees It Incurred Opposing Rule 11 Sanctions (Dkt. No. 32) is **GRANTED**. Plaintiff is directed to file an affidavit with the Court containing the information required by Rule 54.2(b) of the Local Rules of Civil Practice. Plaintiff shall file its affidavit with the Court ***on or before* <u>January 7, 2011</u>**.

---

[5] The Court will not award expenses to MetLife in connection with the motion for sanctions filed in the District of Nevada, which was the subject of Judge Cooke's decision as mentioned herein.

Defendants may file an objection, if any, to Plaintiff's proposed fee award **_on or before_** **_January 14, 2011._**  No other submissions shall be filed on the matter unless first approved by the Court.

      3.      Plaintiff's Motion to Strike (Dkt. No. 33) is **DENIED**.



DATED: December 30, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge