UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| METLIFE BANK, N.A.,<br><br>              Plaintiff,<br><br>    v.<br><br>JOHN BADOSTAIN, JON L. LEWIS, BRIAN J. NEVILLE, MICHAEL D. MCLEAN, and EAGLE HOME MORTGAGE, LLC,<br><br>              Defendants. | Case No. 1:10-CV-118-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER AWARDING ATTORNEY'S FEES** |

On December 30, 2010, the Court granted Plaintiff's motion for an award of attorney's fees incurred as a result of having to defend against Defendants' motion for Rule 11 sanctions. (Mem. Dec. and Order, Dkt. 41.) In accordance with the Court's order, Plaintiff filed a petition for requested fees with supporting declarations, (Dkt. 42), and Defendants filed an objection to the amount of the requested award. (Dkt. 43.) Having reviewed the parties' submissions, and for the reasons set forth below, the Court will award Plaintiff the amount of $14,224.50 in attorney's fees.

## BACKGROUND

The factual background of this case was outlined in the Court's previous Memorandum Decision and Order. (Dkt. 41.) Because the parties are familiar with the facts, the Court recounts them here only as necessary to explain the award of fees.

**ORDER - 1**

In late 2009, Defendant John Badostain left his position as Regional Sales Leader at MetLife Bank, N.A. ("MetLife") and went to work in a similar position for one of MetLife's competitors – Defendant Eagle Home Mortgage, LLC ("Eagle"). In his position as MetLife's Regional Sales Leader, Defendant Badostain oversaw MetLife's branches in the Mountain West Region, which included all branches in Idaho, as well as branches in Nevada and Utah. Shortly after Defendant Badostain went to work for Eagle, several of MetLife's loan officers in branches throughout Idaho left their employment with MetLife and went to work for Eagle.

MetLife instituted the present action alleging that Defendant Badostain, and three other former employees, solicited MetLife employees, causing a "mass exodus" of loan officers from MetLife to Eagle. MetLife claims that this alleged solicitation breached certain contractual obligations that the individual defendants had entered into as part of their employment with MetLife. MetLife also claims that Eagle was complicit in the above alleged solicitation and thereby is liable for tortious interference with contract.

Based on similar factual allegations arising outside of Idaho, MetLife also brought suit in the United States District Court for the District of Nevada against John Badostain and Eagle Home Mortgage of California, Inc.[1] See *MetLife Bank, N.A. v. Riley*, 3:10-cv-

---

[1] It should be noted that the Eagle defendants in the two cases are not the same entity. In the case before this Court, MetLife names Eagle Home Mortgage, LLC, as a defendant. In the District of Nevada case, MetLife names Eagle Home Mortgage of California, Inc. as a defendant. MetLife represents in the Nevada case that Eagle Home Mortgage of California, Inc., is affiliated with, and shares substantial common management with Eagle Home Mortgage, LLC, including a common president and corporate headquarters.

**ORDER - 2**

122-ECR-VPC (D. Nev. 2010) [hereinafter *District of Nevada Order*]. The law firm Payne & Fears, LLP, represents Mr. Badostain and the Eagle defendants in both cases.

On July 16, 2010, following initial discovery and an informal warning to MetLife regarding Defendants' intention to file motions for sanctions in both cases, Defendants provided MetLife with draft motions for Rule 11 sanctions relating to both cases. The draft motions were substantively identical; both alleged that counsel for MetLife violated Rule 11 by filing complaints containing factual contentions "that have absolutely no evidentiary support." (Def.s' Mot. For Rule 11 Sanctions at 2, Dkt. 28.) In both cases, defense counsel failed to provide MetLife with the supporting declarations referenced in the motions. After receiving the draft motions, counsel for MetLife requested copies of the declarations relating to both cases, but did not receive the declarations until August 20, 2010, when defense counsel filed formal motions for Rule 11 sanctions in the District of Nevada and with this Court. MetLife opposed the motions for sanctions and filed motions for attorney's fees in both cases under Rule 11(c)(2).

On October 13, 2010, the District Court for the District of Nevada denied the defendants' motion for sanctions without a hearing. *District of Nevada Order* at 6. The court held that the draft motion, unaccompanied by the relied upon declarations, did not comply with Rule 11's safe harbor provision.[2] *Id*. at 5. The court appeared troubled by the

---

[2] Fed. R. Civ. P. 11(c)(2), known as Rule 11's "safe harbor" provision, requires a party seeking sanctions to first serve the motion on the opposing party, and then wait 21 days before filing the motion with the Court in an effort to allow the non-moving party to consider whether to withdraw the allegedly sanctionable allegations.

ORDER - 3

defendants' failure to provide the declarations upon plaintiff's request, stating that "[t]he court cannot conceive of a reason that defendants declined to provide the declarations referenced in their draft motion upon plaintiff's requests, but hopes that such conduct does not reflect a deliberate attempt to impede cooperation between the parties." *Id*. The court, however, did not find clear evidence that defendants had filed their motion for a nefarious purpose and denied MetLife's motion for attorney's fees. *Id*. at 6.

On November 30, 2010, this Court held a hearing on Defendants' motion for sanctions and MetLife's motion for an award of fees incurred as a result of opposing the motion. Following the hearing, the Court issued a Memorandum Decision and Order, (Dkt. 41), denying Defendants' motion for sanctions and granting MetLife's motion for fees. Like the District Court for the District of Nevada, this Court denied Defendants' motion on procedural grounds – finding the service of a draft motion unaccompanied by the declarations relied upon in the motion inadequate for the purposes of Rule 11's safe harbor requirement, which contemplates the service of a "filing ready motion" 21 days prior to the filing of the actual motion with the court. See *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1151 (9th Cir. 2002).

Unlike the District Court for the District of Nevada, this Court granted MetLife's motion for fees. The Court found that fees were warranted under Rule 11(c)(2) primarily for two reasons: (1) Defendants' motion contained a misstatement of law on a key issue, which Defendants left in their motion even after being notified in writing by Plaintiff's

ORDER - 4

counsel that the draft motion for sanctions contained the same misstatement; and (2) Defendants' motion emphasized the theory and merits of their case, which is improper in a motion for Rule 11 sanctions. See Fed. R. Civ. P. 11, Advisory Committee notes to 1993 Amendments ("Rule 11 motions . . . should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor Should Rule 11 motions be prepared to emphasize the merits of a party's position . . . .").[3]

Pursuant to the Court's order, MetLife submitted a Petition for Attorney Fees, (Dkt. 42), and supporting declarations setting forth the amount of fees and how they were incurred. (Dkt. Nos. 42-1 and 42-2.) MetLife seeks $22,561.50 in fees. (Pet. For Atty. Fees at 3, Dkt. 42.) This sum includes both the fees that were incurred solely in connection with MetLife's opposition to Defendants' motion for sanctions in the District of Idaho, *and* the fees for the work done simultaneously in connection with both the District of Nevada and the District of Idaho cases. MetLife refers to the joint work as "indivisible," and submits that "exactly the same legal research was used in both this case

---

[3] Defendants state in their objection to MetLife's petition for fees that "the Courts in the cases saw the attorney's fee issue relating to the Rule 11 motions differently." (Def.s' Objections to Pl.'s Pet. For Att. Fees at 2, Dkt. 43.) Defendants are correct that the courts ruled differently on the motions for fees. The Court, however, does not believe that the rulings are inconsistent. The District Court for the District of Nevada based its ruling on the procedural issue and expressly stated that it "d[id] not address the merits of the motion for sanctions given its procedural deficiencies." *District of Nevada Order* at 6. This Court, however, did address the merits of the motion for sanctions, and granted MetLife's motion for fees, in part, due to the misstatement of law contain therein. Furthermore, in reviewing the merits of Defendants' motion for sanctions, the Court found that the motion challenged the sufficiency of the allegations contained in MetLife's complaint and emphasized the merits of Defendants' own case, neither of which are proper subject matters in a motion for sanctions under Rule 11.

ORDER - 5

and Nevada . . . . *If the Nevada case never existed*, Plaintiff still would have incurred this sum of $22,561.50." (*Id*. at 2-3, Dkt. 42) (emphasis in original). Alternatively, MetLife states that, "if the Court believes the 'indivisible fees' should be apportioned equally to each case, then the appropriate fee award would be $ 14,224.50." (*Id*. at 3). The alternative figure is calculated by "taking all fees that were incurred solely for the Idaho case ($5,887.50), plus 50% of the 'indivisible fees' ($8,337.00)." (*Id*.)

MetLife's petition for fees and supporting materials set forth the hours worked on the cases, the attorneys who worked on the cases, the rates of the various attorneys, and a brief description of the work performed for each of the billing entries.

Defendants do not object to MetLife's counsel's billing rates or to the particular billing entries listed in the petition for fees. (Def.s' Obj. to Pl.'s Pet. For Atty. Fees at 2, Dkt. 43.) They do, however, object to a fee award that would include fees and costs incurred in connection with the District of Nevada action. (*Id*.) Defendants also object to an award of fees in connection with MetLife's Motion to Strike, (Dkt. 33), which was filed in connection with MetLife's opposition to Defendants' motion for sanctions, and which the Court denied as moot.[4]

---

[4] Defendants state that the Court did not rule on the motion to strike. (Def.s' Obj. To Pl.'s Pet. For Atty. Fees at 3, Dkt. 43.) This mischaracterizes the Court's ruling. The motion was denied as moot.

**DISCUSSION**

Rule 11 of the Federal Rules of Civil Procedure authorizes the court to "award to the person who prevails on a motion under Rule 11 – whether the movant or the target of the motion – reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion." Fed. R. Civ. P. 11 Advisory Committee notes to the 1993 Amendments.[5] The provision, however, is not designed as a fee-shifting mechanism to compensate the prevailing party. *Truesdell v. Southern California Permanente Medical Group*, 209 F.R.D. 169, 175 (C.D. Cal. 2002). Rather, like all sanctions under Rule 11, "[i]ts primary purpose is to deter sanctionable conduct." *Id*.

The language of Rule 11 requires an award of expenses to be both "warranted" and "reasonable." Fed. R. Civ. P. 11(c)(2). The award should also be limited to the services "directly and unavoidably" caused by the sanctioned conduct. Fed. R. Civ. P. 11 Advisory Committee notes to the 1993 Amendments. Rule 11 does not enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in any given circumstance, but the Advisory Committee Notes to the rule provide that proper considerations may include: "Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; . . . whether the person has engaged in similar conduct in other litigation; . . . what effect it

---

[5] Rule 11(c)(2) provides in relevant part that, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."

had on the litigation process in time or expense . . . [and] what amount is needed to deter similar activity by other litigants . . . ." Fed. R. Civ. P. 11 Advisory Committee notes to the 1993 Amendments.

The U.S. Court of Appeals for the Ninth Circuit has held that "the amount of the sanctions and the manner in which they are imposed cannot be inconsistent with the purpose and directive of the authority on which the sanctions are based." *In re Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986). The purpose of awarding sanctions under Rule 11, including an award of attorney's fees to the prevailing party, is deterrence. *Id*. at 1184 (stating that in the context of Rule 11 sanctions, the "overriding purpose" is deterrence and that the sanctioning court should "mold its sanctions in each case so as to best implement that policy"). Thus, in addition to requiring that any fees be a direct result of the offending conduct, the court must consider the deterrent effect of any fee award.

In the Memorandum Decision and Order granting MetLife's motion for fees, (Dkt. 41), the Court determined that attorney's fees are warranted in this case. The remaining question is what amount of fees is "reasonable" in this case for the purpose of Rule 11.

The Ninth Circuit has held that, "[w]hen the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring into the reasonableness of the claimed fees." *In re Yagman*, 796 F.2d at 1184-85. The reasonableness of attorney's fees in federal court is generally based on the "loadestar" calculation set forth by the United States Supreme Court in *Hensley v.*

*Eckerhart*, 461 U.S. 424 (1983). Under the formula set forth in *Hensley*, the court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id*. at 433. In the Rule 11 context, the Ninth Circuit has also held that "[r]ecovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action." *In re Yagman*, 796 F.2d at 1185. Moreover, in the Rule 11 context, the court need not rigidly apply the factors set forth by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) (setting forth the factors the Ninth Circuit uses to determine reasonable attorney's fees),[6] "but the court must make some evaluation of the fee breakdown submitted by counsel." *In re Yagman*, 796 F.2d at 1185 (citing *Toombs v. Leone*, 777 F.2d 465, 472 (9th Cir. 1985)). Finally, the Ninth Circuit has stated that "[t]he measure to be used 'is not actual expenses and fees but those the court determines to be reasonable.'" *Id*. (quoting Schwarzer, *Sanctions Under the New Federal Rule 11 – A Closer Look*, 104 F.R.D. 181, 203 (1985)).

---

[6] The factors the Ninth Circuit articulated in *Kerr* include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

ORDER - 9

MetLife seeks an award of $22,561.50. As stated above, this amount includes both the fees that were incurred solely in connection with MetLife's opposition to Defendants' motion for sanctions in the District of Idaho, and the fees for the work performed simultaneously in connection with both the District of Nevada and the District of Idaho cases. The Court has reviewed MetLife's materials supporting its requested fee award under the relevant *Kerr* factors. Specifically, under *Kerr*, the Court has evaluated the time and labor required to oppose Defendants' motion for sanctions, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, and the experience of the attorneys working on the matter.

The Declaration of Martin Harris Supporting Fee Award, (Dkt. 42-2), indicates that six attorneys worked on the case in connection with MetLife's opposition to Defendants' motion for sanctions. This included MetLife's in-house counsel and five attorneys from the law firm Holland & Hart (MetLife's local counsel). The attorneys that worked on the case ranged in experience and billed at rates ranging between $210.00 and $337.50 per hour. MetLife represents that the time spent opposing Defendants' motion for sanctions totaled 92 hours. Of the 92 hours, 66.1 were billed at an associate rate (ranging between $210 and $250 per hour).

Having reviewed the hours worked, the experience of the attorneys that worked on the matter, the attorneys' hourly rates, and the description of the work performed, the Court finds that the time and amount charged by MetLife's in-house and local counsel is

consistent with the nature of the proceeding and reasonable under the circumstances. Defendants do not object to MetLife's billing entries or the attorneys' billing rates.

The Court also finds that MetLife's motion to strike was directly related to Defendants' motion for sanctions and MetLife is therefore entitled to the fees incurred in relation to that motion. However, a determination that the fees are reasonable does not end the inquiry; the Court must temper its award in light of the purpose of sanctions under Rule 11, which the Ninth Circuit has made clear is deterrence. *In re Yagman*, 796 F.2d at 1184 ("It is critical, however, that the sanctioning court embrace the overriding purpose of deterrence and mold its sanctions in each case so as to best implement that policy."). In the Memorandum Decision and Order granting MetLife's motion for attorney's fees, the Court admonished MetLife not to include fees for the work done in connection with the motion filed in the District of Nevada. MetLife submits that fees requested would have been incurred even if the District of Nevada case did not exist. The Court does not question the validity of that assertion. The Court does find, however, that an award of the fees incurred solely in connection with the District of Idaho matter, plus half of the indivisible fees, is both reasonable and will act as an effective deterrent in this case.

MetLife incurred $5,887.50 solely in connection with the motion for sanctions filed in the District of Idaho. MetLife also incurred $16,674.00 in joint and indivisible expenses in connection with the motions filed in this district and the District of Nevada. Taking half of the indivisible fees ($8,337.00), plus the fees incurred solely for the

District of Idaho matter ($5,887.50), the Court will award MetLife $14,224.50 in attorney's fees.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED** that Plaintiff's Petition For Attorney Fees, (Dkt. 42), is **APPROVED IN PART**.  Counsel for Defendants shall pay Plaintiff MetLife Bank, N.A., attorney's fees in the amount of **$14,224.50**.



DATED: May 4, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge